UNITED STATES, Appellee

v

MARTIN E. HAMILL, Sergeant, U. S. Army, Appellant

8 USCMA 464; 24 CMR 274

*First Lieutenant David N. Gorman* argued the cause for Appellant, Accused. With him on the brief were *Colonel Edward M. O'Connell* and *Captain John F. Christensen.*

*Major Thomas J. Nichols* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Upon his arraignment before a general court-martial, the accused pleaded guilty to the crime of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. Before accepting the plea, the law officer held an out-of-court conference to make sure that the plea was being entered voluntarily and intelligently. To that end he asked the accused to state in his own words why he was pleading guilty. The accused replied generally that he had committed the crime; that his own pretrial confession would serve to convict him; and that even though he knew he could exercise his legal right to plead not guilty, he did not wish to waste his own time and the court's with a full dress trial. Further inquiry by the law officer developed that the accused and his counsel had made a proposal to the convening authority for a sentence substantially better than the maximum imposable for the offense of larceny, conditioned upon his entering a guilty plea, which proposal was considered favorably by the convening authority. The law officer then questioned the accused upon his understanding of the terms of the proposition he submitted to the convening authority. It was the accused's impression that in consideration of his plea of guilty, the convening authority would not approve a sentence greater than dishonorable discharge, total forfeitures, and confinement at hard labor for two years; that the

dishonorable discharge would be suspended during the period of confinement; and that if he were a "good man in confinement," the discharge would not be executed and he would be restored to duty. On this basis, the law officer accepted the guilty plea. The court convicted the accused as charged and sentenced him to dishonorable discharge, total forfeitures, and confinement at hard labor for three years. In his review of the case, the staff judge advocate discussed the offer made by the accused, and this is his statement of the terms of the maximum sentence which he understood would be affirmed:

". . . Prior to trial the counsel for the accused advised the Staff Judge Advocate that the accused had decided to enter a plea of guilty to the charge and specification and requested that leniency be given to the accused. The Staff Judge Advocate thereupon, acting for the convening authority and with his concurrence determined that only so much of the sentence as may be adjudged by the court as provides for a dishonorable discharge, suspended, forfeiture of all pay and allowances and confinement at hard labor for two (2) years be approved."

The convening authority subsequently reduced the sentence to make it conform to the offer, but, because his wording is all-important, we quote the action taken by him:

". . . only so much of the sentence as provides for a dishonorable discharge, confinement at hard labor for two (2) years, and forfeiture of all pay and allowances . . . but the execution of that portion thereof adjudging dishonorable discharge is suspended until the accused's release from confinement or until completion of appellate review, which ever is the later date."

The board of review affirmed the findings and sentence, and the accused's petition for review was granted by us to consider whether the sentence, as approved by the convening authority, was in agreement with the understanding of the accused.

Article 45, Uniform Code of Military Justice, 10 USC § 845, provides in pertinent part that "if it appears that . . . [the accused] has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect . . . the court shall proceed as though he had pleaded not guilty." While that provision does not fit this case precisely, it suggests that Congress intended an accused should not be permitted to plead guilty if there is any honest mistake inducing his judicial confession. Here it is indicated that the accused interpreted the nature of the suspension to be imposed in one manner, while military authority construed it differently. The out-of-court conference, which was reported and is appended to the record as an appellate exhibit, establishes that the accused understood the dishonorable discharge portion of his sentence would be suspended upon approval and that his good conduct would insure against a revocation. He thought his offer was understood by the military authorities to include a suspension of the dishonorable discharge which would be effective immediately, and, if his prison behavior met prescribed standards, an automatic remission would follow. The staff judge advocate's review might be said to support that view, but the sentence approved by the convening authority and other papers in the record show that military authorities intended only a temporary suspension during the appellate processes which might ripen into

an absolute suspension and remission of the discharge if certain officials, such as the members of the Clemency Parole Board and others, concluded from many criteria that such clemency was appropriate. It is thus apparent that the suspension ordered is but a step in the direction of the result expected by the accused. Certainly, there is no assurance within the terms of the sentence approved by the convening authority that accused's good behavior in confinement will be the sole criterion upon which a remission and restoration to duty will be considered. We, of course, know that servicemen committing larcenies face policy considerations militating against suspensions and remissions, and in the end this accused may receive a dishonorable discharge regardless of his prison deportment. Assuming, as we must, that the accused and the convening authority dealt with each other in good faith, there was an honest mistake on the conditions of the suspension which should be corrected. Therefore, the following disposition is ordered. If the accused's conduct since conviction has been good and a military authority with power to do so remits the dishonorable discharge within thirty days, the decision of the board of review is affirmed. Otherwise, a rehearing is ordered.

QUINN, Chief Judge, with whom Judge FERGUSON joins (concurring in the result):

A plea of guilty may be set aside if the plea is based upon a misunderstanding by the accused as to the sentence, and his misunderstanding is brought about by the promise or the remarks of a proper authority. United States v Paglia, 190 F 2d 445 (CA 2d Cir) (1951); United States v Lias, 173 F 2d 685 (CA 4th Cir) (1949). The principle is clear. What is not clear, however, is whether the accused must, as part of the application to set aside the plea, aver that he is innocent of the charge. On the one hand is the argument that the only consideration is whether the plea is the free and voluntary act of the accused. On that basis, guilt or innocence is of no importance. Support for this view is sought in such cases as Kercheval v United States, 274 US 220,

466

71 L ed 1009, 47 S Ct 582, 583 (1927) and Shelton v United States, 242 F 2d 100 (CA 5th Cir) (1957). In the *Kercheval* case the United States Supreme Court said:

". . . But, on timely application, the Court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. *Such an application does not involve any question of guilt or innocence.* Commonwealth v Crapo, 212 Mass 209, 98 NE 702. The Court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just [citing cases]." [Emphasis supplied.]

The line of approach founded on the *Kercheval* statement emphasizes that justice requires that the accused and the Government be restored to the position they were in before the plea. On the other hand, there is respectable authority for the view that the accused must "tender an issue" as to his guilt or innocence before the plea will be set aside. One of the strongest statements of this view is that of Judge Learned Hand in United States v Paglia, supra. In that case the accused moved to vacate his plea of guilty and the sentence. He alleged that the plea had been induced in part by the prosecutor's promise to recommend a sentence of not more than five years. The purported promise was not kept. The defendant's affidavit in support of the motion did not contain any denial of guilt. The Court of Appeals for the Second Circuit denied the motion as to the plea but granted it as to the sentence. The reason for the difference was set out by Judge Learned Hand as follows:

". . . he [the accused] has twice admitted all the facts constituting the crime and he still does not repudiate his admissions. A person indicted for crime may of course insist that only a jury shall decide his guilt; but he must at least deny that he is guilty; he must tender an issue. In the case at bar whether or not Paglia has any ground for relief

as to his sentence, surely he has none for withdrawing his plea. He is not entitled to gamble upon the outcome of a trial in which he could succeed only by repudiating what he has twice conceded and does not now disavow. Justice is not a game; there is no constitutional right to 'throw dust in a juryman's eyes, or hoodwink a judge who is not overwise.' So far then as the motion was to set aside the plea of guilty and permit a plea of not guilty to be substituted, it is contrary to principle, and, as it happens, is also contrary to the only precedents that we have found."

Much can be said for both views. However, in an appropriate case the interest of justice is better served by setting aside the plea without regard to whether the supporting affidavit contains an averment of innocence. It preserves the integrity of the trial and the position of the convening authority and avoids "the very appearance of impurity." See United States v Walters, 4 USCMA 617, 630, 16 CMR 191.

The Government contends that the convening authority's action correctly reflects the actual agreement. That indeed may be true. But the accused unquestionably misunderstood the practical and legal effect of the suspension. Manifestly, he believed that good conduct during confinement would assure his restoration to duty. On the basis of statistics compiled for the period from July 1954 to December 1956, he maintains that "less than 5% of all Army prisoners *desiring* restoration have been returned to duty." Of course, "desiring" restoration to duty is not the equivalent of "deserving" restoration, but from the figures presented it appears that the practical prospect of restoration is not encouraging. However, I need not analyze the accused's statistics for accuracy or applicability to our problem. More important is the legal effect of the kind of suspension he received. One board of review described the suspension as "a technical legal term, [which] means one thing to military personnel and perhaps something different to a civilian." United States v McIlhiny, CM 391081, November 23,

**467**

1956. I agree fully with the description as "a technical legal term," but doubt that its meaning is understood by all military personnel. This accused obviously did not understand it. And I am not too sure that the military meaning is as certain as both the board of review in the *McIlhiny* case indicated and the principal opinion here implies.

In his action the convening authority suspended execution of the discharge "until the accused's release from confinement or until completion of appellate review, which ever is the later date." The principal opinion describes the suspension as a "temporary suspension during the appellate processes which may ripen into an absolute suspension and remission of the discharge." I have already noted the practical uncertainty of a "temporary suspension" ripening into an "absolute suspension and remission." But more significant is the legal question of whether a suspension of the kind above mentioned can end in execution, without a hearing and without an order vacating the suspension as required by Article 72 of the Uniform Code, 10 USC § 872.

Article 72 of the Uniform Code provides:

"(a) Before the vacation of the suspension of a special court-martial sentence which as approved includes a bad-conduct discharge, or of any general court-martial sentence, the officer having special court-martial jurisdiction over the probationer shall hold a hearing on the alleged violation of probation. The probationer shall be represented at the hearing by counsel if he so desires."

It is arguable that suspension of the execution of a sentence for the period of appellate review is already provided for by law (see Article 71 (c), (d), Uniform Code of Military Justice, 10 USC § 871), and that a suspension for that period is not within the requirement of Article 72. However, the Uniform Code does not specifically provide for suspension of execution for any period beyond that required for completion of appellate review. Consequently, a different rule may apply to such a situation. True, the Manual for Courts-Martial recites that a sentence in which the execution of a punitive discharge has been suspended until the completion of appellate review or the accused's release from confinement can be ordered executed "without a hearing under the provisions of Article 72." Manual for Courts-Martial, United States, 1951, paragraph 88 (e)(2)(b), page 150. We haven't had the specific question before us, and we have never directly determined the validity of the Manual's provision. Cf. United States v Butts, 7 USCMA 472, 22 CMR 262. The point is not in issue here, and I prefer to reserve decision on it. Accordingly, I disassociate myself from that part of the opinion which gives implied approval to the Manual's construction of Article 72.

I concur in the result.