UNITED STATES, Appellee

v

CLARENCE D. HILL, Private, U. S. Marine Corps, Appellant

9 USCMA 10, 25 CMR 272

*Commander Charles Timblin,* USN, argued the cause for Appellant, Accused.

*Lieutenant Colonel Charles H. Beale, Jr.,* USMC, argued the cause for Appellee, United States. With him on the brief was *First Lieutenant Daniel P. Reardon, Jr.,* USMCR.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Two issues are presented by this appeal. The first concerns the sufficiency of the evidence to support the findings of guilty of Charge II which alleges the larceny of two 5-gallon cans of coffee (containing approximately 40 pounds) from the Marine Barracks Mess Hall. We have examined the record of trial with care and we are satisfied that there is sufficient evidence to support the findings of guilty. United States v Johnson, 6 USCMA 20, 19 CMR 146.

The second question is whether prejudicial error was committed by the admission of certain testimony of Major Bennett, a Government witness. The witness, who was executive officer of the accused's organization, testified that he searched the accused's locker as part of an investigation into black marketing because the accused had been "mentioned in this blackmarketing situation," and he wanted to "see if there was anything that would connect him" with it. The search uncovered "a couple of cigarette rations cards . . . [and] some other types of cards . . . [which] belonged to other persons."

Except possibly for impeachment, evidence that an accused was suspected of other acts of misconduct is inadmissible. United States v Kelley, 7 USCMA 584, 23 CMR 48; United States v Hubbard, 5 USCMA 525, 18 CMR 149. Consequently, it was error for the president of the special court-martial to fail to strike the testimony from the record and to instruct the court members to disregard it. In the light of the other evidence, the error was prejudicial.

The accused was on guard duty. He reported to the sergeant of the guard that he had observed suspicious persons in the area of the galley and, on investigation, had discovered the coffee cans. He had put them into his jeep to take them to the guard house when he was "apprehended" by a base criminal investigator. The latter testified, however, that about an hour before, he had observed the accused secreting the cans in the water drainage system near a warehouse. Other evidence established that sometime earlier the accused had reported that a door in the galley, which was supposed to be locked, was unlocked. Considering the conflict in the evidence and the quantity of coffee stolen, Major Bennett's inadmissible testimony could easily have weighed heavily against the accused.

The board of review below concluded that the error was waived by defense counsel because he failed to object and also elicited similar testimony from a defense witness. We reach a different conclusion for two reasons. First, this is a special court-martial case and defense counsel was not a lawyer. Consequently, his failure to object, standing by itself, does not amount to a waiver. United States v Moore, 4

USCMA 675, 16 CMR 249. Second, defense counsel did not elicit the testimony from the witness.

Besides the larceny charge, the accused was charged with violating an order prohibiting possession of the identification card of another. Defense counsel attempted to obtain admissions from Major Bennett to the effect that, when he searched the accused's property, the accused did not appear to be aware of the presence of the liberty cards of other persons among his belongings. The admissions, however, were not forthcoming. As a result, defense counsel called Lieutenant Beason as a witness. The lieutenant had accompanied Major Bennett during the search. As appears from the following extract from his testimony, Lieutenant Beason volunteered the information about the black market investigation, and trial counsel picked up the point and emphasized it by cross-examination.

"3. Q. [DC] Lieutenant Beason, do you recall the time after the 25th of May when you and Major Bennett conducted a search of Private Hill's belongings?

"A. I do.

"4. Q. Would you describe to the court the events that happened during your search of Private Hill's foot locker.

"A. Major Bennett had asked me to assist him in going through Private Hill's locker to expedite a search concerned with an investigation involving black market activities. We found a number of papers, letters and cards in his locker box. I was looking through one stationery box and came across what appeared to be the identification of another man including a liberty card, ration card and other types of identification belonging to someone other than Hill. I'm not certain of who the cards belonged to. I think it was a man named Moore or something like that.

"5. Q. I show you Prosecution Exhibit #13.

A. I'm sure this is the liberty card that was found in Hill's locker.

"6. Q. Did the accused appear to be aware that the card was in the box?

"A. I couldn't answer that on what his reaction was on me finding it, however, he made some comment that the box didn't belong to him or something like that. The stationery box did have Hill's name on the outside of the box.

"DEFENSE COUNSEL: No further questions.

"7. Q. [TC] Lieutenant Beason, do you know the reason that Major Bennett searched the locker box of the accused?

"A. Hill, at this time was suspected of being engaged in possibly black market activities. As I said, the Major was conducting the search for any documentary evidence or for any real evidence might, that might be in the person's possession."

In addition, the accused contends that there are other errors in the admission of evidence. Assuming that the contention has merit, the purportedly inadmissible evidence concerns only the larceny charge. Since we have found prejudicial error affecting that charge, we need not consider the other claims of error. No substantial issue has been presented which affects the findings of guilty of Charge I.

The decision of the board of review is reversed. The findings of guilty of Charge II and the sentence are set aside and the record of trial is returned to The Judge Advocate General, United States Navy, for resubmission to the board of review. In its discretion, the board of review may dismiss Charge II and reassess the sentence, or order a rehearing on Charge II and the sentence.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The board of review considered the second question concerning the error in admitting the testimony of Major Bennett and resolved it against the accused. Its reasons may be gathered from this portion of the opinion:

"The third and final assignment of error urges that the accused was substantially prejudiced by the testimony of Major L. F. Bennett, USMC, a prosecution witness. This witness, in response to a question of trial counsel inquiring as to the circumstances surrounding the search and the reasons for it, stated that the search of the accused's locker had been made because the latter was suspected of blackmarketing activity in cigarettes. Trial defense counsel made no objection to such testimony and, in fact, elicited similar information from a witness for the accused—one Lieutenant Beason, who assisted Major Bennett in the search. Minor errors of this nature are bound to creep into courts-martial. However, a finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused. Article 59 (a), Uniform Code of Military Justice, U. S., 1951. We do not consider that this error was such as to so prejudice the accused in the instant case. The competent evidence of record is sufficient to sustain the findings of the court-martial. The third assignment of error is also without merit."

A good argument can be advanced that the testimony was admissible but I need not dwell on that subject for assuming error I concur with the board of review that there was no prejudice. The evidence of guilt on the larceny charge was compelling, the questioned statement was made by a witness who was testifying on the other charge and when consideration is given to the quality and quantity of the prosecution testimony, there is no fair probability that the court was influenced on either findings or sentence by the Major's suspicions of blackmarketing operations.

I would affirm the decision of the board of review.