UNITED STATES, Appellant

v

ROBERT E. ZEMARTIS, Fireman,
U. S. Navy, Appellee

10 USCMA 353, 27 CMR 427

No. 12,668

Decided April 17, 1959

*Major Ted H. Collins*, USMC, argued the cause for Appellant, United States.

*Major E. W. Johnson*, USMC, argued the cause for Appellee, Accused.

### Opinion

HOMER FERGUSON, Judge:

The accused, tried before a special court-martial for a twenty-six-day absence without leave, entered a plea of guilty. The president of the court-martial, in ascertaining that the accused understood the meaning and effect of the plea, advised him that the maximum sentence the court could award "for the offense to which you have pleaded guilty is: Confinement at hard labor for six months, forfeiture of two-thirds of his pay per month for a period of six months, and reduction to the grade of fireman recruit." The accused indicated his understanding and persisted in his plea of guilty. After findings, evidence of three previous convictions by court-martial was introduced and the president advised the court that the maximum sentence which could be imposed was a bad-conduct discharge, confinement at hard labor for six months, forfeiture of two-thirds of his pay for six months, and reduction to the grade of fireman recruit. The court-martial imposed a sentence which included a bad-conduct discharge.

The Judge Advocate General of the Navy has certified two issues to this Court. The first is:

"Did the president of the court-martial err when he failed to include in his advice to the accused, following the latter's plea of guilty, the fact that a bad conduct discharge was a permissible additional punishment in the event of proof of two or more previous convictions?"

A plea of guilty, to be accepted, must be freely and voluntarily entered by the accused. United States v Butler, 9 USCMA 618, 26 CMR 398; United States v Willie, 9 USCMA 623, 26 CMR 403. Paragraph 70*b*, Manual for Courts-Martial, United States, 1951, indicates that before accepting a plea of guilty, the president of a special court-martial should explain to the accused the meaning and effect thereof, unless it otherwise affirmatively appears that

354

the accused understands the meaning and effect of his plea. The explanation includes a statement that the maximum punishment authorized for the offense to which the accused has pleaded guilty may be adjudged upon conviction thereof. Cross-reference is made therein to Appendix 8*a* of the Manual, supra, for an example of the procedure to be followed. At pages 509 to 510 is given an example[1] which, had it been followed in the instant case, could have avoided the error now complained of. It provides in part:

"If an enlisted person has pleaded guilty to an offense or offenses for none of which dishonorable or bad conduct discharge is authorized, the LO (president of a special court-martial) should supplement his advice as to the maximum punishment with a statement in substantially the following form: *'However, if the court receives evidence of two or more previous convictions, the maximum punishment which could be adjudged for the offense(s) to which you have pleaded guilty would be: bad conduct discharge, confinement at hard labor for ——————, and forfeiture of ——————.'*[2] This supplemental advice may also be appropriate in the case of an accused who is a prisoner sentenced to a punitive discharge. In this connection, see Section B, Table of Maximum Punishments (127*c*).

"If the accused persists in his plea of guilty, and it appears later that he was erroneously advised of a punishment less severe than the maximum legally authorized for the offense or offenses to which he pleaded guilty, the court should advise him of the correct maximum punishment and give him an opportunity to withdraw his plea of guilty. See 70."

This, then, gives the president of a special court-martial alternative means of obviating the error: (1) by giving a conditional type of advice, or (2) by further advising the accused as to the correct maximum punishment and permitting him to withdraw his plea of guilty. The failure of the president here to pursue one of these courses clearly constitutes error. The answer to the first certified issue, then, is that the president erred by failing to adopt one of the mentioned alternatives.

The second certified issue states:

"If the answer to the first issue is in the affirmative, was the error cured by the failure of the accused to change his plea after the president instructed the court that the maximum allowable punishment included a punitive discharge?"

Here, again, the quoted mandate from the Manual would place the burden upon the president of a special court-martial to correctly advise the accused and give him an opportunity to withdraw his plea. Cf. Article 45, Uniform Code of Military Justice, 10 USC § 845. I think the burden is properly placed. An accused is entitled to rely upon advice as to the maximum sentence given him by the president of a special court-martial. Where, as here, the court-martial imposes a sentence more severe than that which the accused was led to believe was authorized, prejudice clearly follows.[3]

The error was not cured nor was its prejudicial effect lessened by the failure of the accused to change his plea after the president instructed the

---

[1] The note at page 509 of the Manual, supra, indicates that "Upon inquiry by the accused," the president of a special court-martial should advise him of the maximum punishment. It is not necessary that we here determine whether this correctly states the law or whether in all cases the accused should be so advised. Suffice it to say that where the accused is advised as to the maximum permissible punishment, such advice must be correct.

[2] The quoted language must be modified as required to comply with the provisions of Executive Order No. 10565, 19 F R 6299, September 28, 1954, the details of which are not necessary to our discussion.

[3] Boards of review considering similar issues have reached comparable results. See United States v Morgan, 6 CMR 462; United States v King, 13 CMR 532; United States v Gherardi, 8 CMR 562.

court-martial that the maximum allowable punishment included a punitive discharge. The certified issue in essence is whether the accused, by failure to change his plea, has waived the right to object to the error. I am not disposed to apply the doctrine of waiver in a special court-martial where, as here, the appointed defense counsel was not a lawyer in the sense of Article 27, Uniform Code of Military Justice, 10 USC § 827. United States v Hill, 9 USCMA 10, 25 CMR 272; United States v Anderson, 8 USCMA 603, 25 CMR 107; United States v Williams, 8 USCMA 443, 24 CMR 253.[4]

The second certified issue is answered in the negative. The decision of the board of review, which approved a sentence not including a bad-conduct discharge, is affirmed.

Chief Judge QUINN concurs in the result.

LATIMER, Judge (dissenting):

I dissent.

At first blush, the majority's disposition of the case at bar seems plausible but, when the issue is critically examined, the plausibility disappears and the holding is not sustainable on any logical or legal basis. Fundamentally, support for the Court's position must be found in one of two alternatives. Either this accused entered his plea of guilty improvidently or he was denied a fundamental right or privilege during the hearing on sentence. In connection with the first proposition, it is significant to note that the accused does not make any such contention, and well he could not, for the crime involved was a simple absence without leave, his guilty plea preceded the discussion on sentence, and it was in no way induced by any promise of leniency. He was represented by counsel who should have some knowledge of the law governing increased punishment and there is not a shred of evidence to indicate the

accused was not informed and did not know the maximum sentence which could be imposed when his entire record was exposed to the court. The improvidence of a plea must be predicated on facts and circumstances which exist at the time of its entry, even though, of course, they may be adduced subsequent to the plea. Here the record is barren of any evidence which remotely suggests an imprudent judicial confession. Had there been a breach of a pretrial agreement on sentence, the accused might have asserted some basis for a claim of misrepresentation, but his plea was not induced by any promised ceiling on punishment. Moreover, the statements by the president during his explanations were made after accused had pleaded guilty and they could not have influenced his action in judicially confessing his sin. Accordingly, there is no merit to any contention of irregularity in the plea.

As to the second alternative, it too lacks merit. The most unusual aspect of this facet of this decision is that accused is handed an unwarranted premium because of a statement by the president of the court which, when uttered, was entirely accurate and proper. No doubt the president might have been more precise had he been omniscient or anticipated accused's prior record, but not once did he misadvise the accused nor did he fail to extend to the accused any legal right or privilege due him. When he announced the maximum sentence to be confinement for six months and appropriate accessories, he stated the law correctly. When he subsequently stated the increased maximum sentence, he likewise used the proper standard and gave the reason for the change. I suppose in retrospect we can say that out of a superabundance of caution he, without request, might have given the accused a second chance to reverse his plea, but I do not believe an accused has a legal right to that degree of care. In the case at bar ordinary caution was used, for prior to

---

[4] An informal waiver could, of course, occur even in a special court-martial case if it is shown the accused was properly apprised of the correct maximum punishment and of his right to change his plea and chose not to do so. However, such is not the case here.

mentioning any limits on punishment, the president announced in open court the maximum sentence could be imposed, and the accused replied he understood he was subjecting himself to that penalty. If the accused knew at that time he could be sentenced to the maximum limit, when evidence of the prior convictions was introduced and the president stated they authorized an increase in punishment so that a bad-conduct discharge could be imposed if considered appropriate, the accused was put on notice that additional punishment might be adjudged. I think it only fair to assume defense counsel and the accused were possessed of the ordinary sense of hearing; that they heard and understood the president when he stated the maximum limits previously announced were extended by the subsequent testimony; and that they knew the more severe penalty could be legally imposed. Certainly nothing was said or done by counsel or the accused which suggested that prior to the time the plea was entered they were not well aware of the law which permitted increased punishment for previous offenses, and their failure to act when it was announced in their presence is strong support for a belief they were not uninformed. Had they registered surprise at that time or if they now contended they misunderstood or were ignorant of the law, a more meritorious issue would be presented. But, as I read the record, accused must rest his case on the bare assertion that the president of the court erred when he did not ritualistically follow a form set out in Appendix 8a of the Manual for Courts-Martial, United States, 1951. He did follow precisely the procedure outlined in paragraph 70b of the Manual, supra. However, the Appendix contains a suggested mode of procedure which is more detailed, and it is his failure to comply strictly with this guide which is the sole support for the Court's decision.

We have held in previous occasions that the provisions set out in the Appendix to the Manual are merely procedural aids which grant no fixed rights or privileges and, as a matter of information, the section is captioned "Guide—Trial Procedure." Heretofore, they always have been considered as advisory, but in this case they are apparently elevated to the dignity of the law, for under no other theory could it be held the president erred. I support the use and validity of the Manual, but an inspection of the particular portion with which we deal will disclose a president of a special court, when advising on a plea of guilty, is only required to mention the maximum sentence if requested by an accused. If, therefore, we use the Manual for our source of the law in this case, we should give force and effect to all the relevant parts and not use only those portions favorable to one party. Here the original explanation was given gratuitously, but that does not compel a holding that the president must shoulder the responsibility for making further and additional explanations without being put on notice they are desired. If, after findings, testimony is introduced and the defense is doubtful of its legal effect on sentence, counsel can ask that the accused be further advised but, absent a request, no legal duty is placed on the president to anticipate ignorance of what transpires in the courtroom and explain every step of the proceedings. While I have no desire to dispute the rule that if a president of a special court volunteers advice it must be correct, I doubt that anyone will seriously contend this president at any time misadvised the accused.

Much is said in the Court's opinion concerning the doctrine of waiver and its inapplicability in special courts-martial cases, but I do not need to reach that principal in this instance. As I understand that doctrine, it is the relinquishment of a right or the renunciation, repudiation, or surrender of some privilege. Waiver in this case obviously presupposes a legal duty on the part of the president of the court to offer the accused a second chance to withdraw his plea when he had every reason to believe the accused was well informed. I choose to say "informed" because at the time the president explained the nature and

effect of the plea of guilty, he notified the accused the maximum sentence could be imposed and each time he spoke he used the correct yardstick based on the information available to him. Originally, he offered the accused a chance to withdraw his plea but, in spite of the fact accused knew his own prior record and that, in all probability, both he and his counsel knew the maximum sentence imposable, that relief was not requested. Proper findings were then returned and when the subsequent information—which accused knew would be presented to the court for he stipulated to his previous convictions—was introduced in evidence, all participants in the trial were advised the maximum punishment previously announced had been increased and a bad-conduct discharge could be imposed. The record points unerringly to the fact that everyone in the courtroom understood the president's instructions and knew the situation, yet the Court to reach its result must speculate the accused did not, even though to this day he does not deny his understanding. Accordingly, it appears to me that conjecture is the sole touchstone for a holding accused was uninformed, for all he has ever asserted is the president erred because after his second explanation he did not have the foresight to offer accused "a second bite of the apple." Significantly, it is worth noting he did not nor does he now come forward and assert that had the offer been made it would have been accepted.

Finally, assuming, contrary to every reasonable inference deducible from this record, the possibility that after the accused had been informed a bad-conduct discharge could be imposed, he and his counsel failed to appreciate the significance of the language used, I would not charge the president of a special court-martial with the legal duty of giving a second explanation of the effect of the plea unless in some manner he was put on notice the accused needed further advice. As I view this record, it is futile to contend the accused should not be held to have relinquished any legal right at the trial for the simple reason he had no privilege to waive.