UNITED STATES, Appellee

v

ROBERT BURNS CLARK, Seaman, U. S. Navy, Appellant

12 USCMA 363, 30 CMR 363

No. 14,641

Decided April 28, 1961

*Lieutenant Colonel Remmel H. Dudley*, USMC, argued the cause for Appellant, Accused.

*Commander Louis L. Milano*, USN, argued the cause for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Before a special court-martial, the accused pleaded guilty to a charge of unauthorized absence for a period of twelve days, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He was convicted on his plea and sentenced to a bad-conduct discharge, confinement at hard labor for six months, and partial forfeitures. The convening authority modified the sentence and, so modified, it was affirmed by the supervisory general court-

martial authority and a divided board of review.

The question which divided the board, and which is raised by the accused's petition to this Court, is whether the president of the special court-martial erred to the accused's prejudice in failing to advise him, in connection with his plea of guilty, that a punitive discharge could be adjudged by the court-martial upon receipt of evidence of previous convictions. The record of trial shows that the accused was represented

**363**

by defense counsel who was not a lawyer in the sense of Article 27(b), Uniform Code of Military Justice, 10 USC § 827. At the time of the accused's plea of guilty, the president advised him fully as to his right to plead not guilty and to put the Government to its proof. The president further advised the accused that a plea of guilty subjected him "to a finding of guilty without further proof . . . [and that he could] be sentenced by the court to the maximum punishment authorized for it." The accused indicated he understood the meaning and effect of the plea of guilty and he persisted in his plea. The trial proceeded to findings of guilty. During the subsequent sentence proceedings, the accused testified under oath to the reasons for his absence. Thereafter, the president instructed the court-martial on the limits of punishment. In part, he advised the court that the offense of which the accused was found guilty did not authorize imposition of a bad-conduct discharge, but that such punishment could be imposed on the basis of admitted evidence of three previous convictions. At the end of his instructions the president asked defense counsel if he desired "to argue as to the quantum of punishment." Defense counsel answered in the affirmative, and made the following statement: "I would like to ask the court's consideration in the bad conduct discharge. He realizes what he has done and that he must be punished, but not to the extent of a bad conduct discharge for twelve days UA."

It further appears that about two weeks after trial, the accused petitioned the convening authority for suspension of the sentence and restoration to duty on probation. The petition was granted to the extent that the convening authority suspended execution of that part of the sentence in excess of two months' confinement and forfeiture, with provision for automatic remission of the whole sentence, including the discharge, at the end of six months.

Appellate defense counsel contends that the president of the court committed prejudicial error in failing, alternatively, to advise the accused at the time of the entry of his plea of guilty that on the admission of evidence of previous convictions he was subject to additional punishment in the form of the imposition of a bad-conduct discharge, or to accord him an opportunity to withdraw his plea when the evidence of previous convictions was introduced. There is no contention that the accused would not have entered the plea of guilty if he had known the true maximum punishment to which he was subject, or that he believes he has a good defense to the charges. In United States v Hamill, 8 USCMA 464, 24 CMR 274, we held that "in an appropriate case the interest of justice is better served by setting aside the plea without regard to whether the supporting affidavit [or, to interpolate, the assignment of error] contains an averment of innocence." However, it is certainly helpful to an appellate court, and good practice, to inform the court of these matters. Frank and full discussion may make it apparent that even the "appearance of impurity" is not present in the case. For the purposes of this case, we may disregard the accused's omissions to reach the merits of his contention.

Three cases are relied upon to support the contention. All are distinguishable in important particulars from the present case. In United States v Zemartis, 10 USCMA 353, 27 CMR 427, the president of the special court misinformed the accused of the maximum permissible sentence. At arraignment he advised the accused of the punishment for the offense. The advice did not mention a bad-conduct discharge. Later, however, the president instructed the court that it could adjudge a punitive discharge because of the evidence of previous convictions. We held that the misstatement of the maximum punishment may have influenced the accused's plea of guilty and was, therefore, prejudicial to him. In United States v Downing, 11 USCMA 650, 29 CMR 466, the president informed the accused he was subject to the maximum punishment for the offense. Subsequently, he instructed the court that the maximum sentence it could impose included a bad-conduct discharge and confinement at hard labor for six months, but he did not indicate that the

basis for the punitive discharge was the evidence of previous convictions. The board of review held that in these circumstances it was error not to have informed the accused of the additional punishment to which his plea subjected him. We sustained its decision. There, as in *Zemartis*, the record of trial did not exclude the fair risk that the president's failure to clarify the sentence limits in the light of the additional punishment provisions might have led the accused to believe he could not be punished beyond the basic limits prescribed for the offense of which he was found guilty. Cf. Reynolds v Cochran, 365 US 525, 5 L ed 2d 754, 81 S Ct — (March 20, 1961). The third case is United States v Jumpe, 11 USCMA 798, which we returned to the board of review for reconsideration on the authority of the *Downing* case.

The *Jumpe* case is much like this case. There, as here, at the time of the accused's entry of the plea of guilty, the president advised him that on his plea of guilty he could "be sentenced . . . to the maximum punishment authorized for the offense" charged. Later, he instructed the court that by reason of the evidence of previous convictions which had been introduced by the Government it was authorized to impose a bad-conduct discharge as additional punishment. In *Jumpe*, there was no clear indication in the record of trial that the accused at any time was aware that his plea of guilty subjected him to a punitive separation from the service. Here, however, the patent purpose of the accused's sworn testimony and the tenor of defense counsel's argument clearly indicate the accused's previous knowledge and understanding that his plea of guilty subjected him to a sentence extending to a bad-conduct discharge. The record indication is confirmed by the accused's post-trial request for probation. If he had had no knowledge or understanding that he could be sentenced to a bad-conduct discharge on his plea of guilty at the time of trial, it is unlikely indeed that he would have requested probation, rather than attack, as he does now, the validity of his plea. See United States v Lemieux, 10 USCMA 10, 27 CMR 84. In these circumstances, we agree with the board of review that it would have been "an empty gesture . . . to offer him [the accused] an opportunity to withdraw his plea."

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

In my dissenting opinion in United States v Zemartis, 10 USCMA 353, 27 CMR 427, I spelled out my reasons for concluding that there was neither error on the part of the president of the special court-martial nor prejudice to the accused. While in his dissent in this case Judge Ferguson identifies me as author of the later case of United States v Downing, 11 USCMA 650, 29 CMR 466, he should get no solace from that fact. For reasons which ought to be apparent to the reader it was published as a per curiam decision and it specifically notes that the law announced in *Zemartis* was fixed by a majority of the Court. Conceding that in *Downing* I yielded to the views of my associates, at no time have I ever believed that in this line of cases any of the accused persons either entered a plea of guilty or permitted it to stand because he and his counsel were wanting in foresight or forethought. Accordingly, I see no reason to extend what I believe to be bad law when the Chief Judge and two members of a board of review find the facts of this case do not bring it within the sweep of the previous decisions.

FERGUSON, Judge (dissenting):

I dissent.

In my view, the rationale and decision in this case misses the point of our holdings in United States v Zemartis, 10 USCMA 353, 27 CMR 427; United States v Downing, 11 USCMA 650, 29 CMR 466; and United States v Jumpe, 11 USCMA 798. The result is that we now affirm this accused's conviction on the basis of our speculation concerning whether he knew he might receive a bad-conduct discharge when he pleaded guilty whereas, in the cited cases, we reversed under precisely the

same circumstances. Moreover, with this decision, we render uncertain an area of the law which had heretofore been deemed settled and extend an invitation to lower appellate bodies either to affirm or reverse on the same facts as they see fit. This will not provide equal justice under law.

The accused was tried by special court-martial and pleaded guilty to an absence without leave of twelve days, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886. At the time of his plea, he was informed of his right to plead not guilty and that, if he persisted in his plea of guilty, he might be awarded the "maximum sentence" authorized for his offense. Accused persisted in his plea, and the court-martial returned findings of guilty. After matters in mitigation and extenuation had been presented as well as evidence of three previous convictions, the president of the court-martial advised the members that, because of the prior convictions, accused might be sentenced to a bad-conduct discharge as a permissible additional punishment. He then asked defense counsel, a nonlawyer, if he desired to argue the issue of appropriateness of punishment. Counsel replied that he did and made a two-sentence statement in which he simply requested the court members not to impose a punitive discharge for "twelve days UA."

Nevertheless, the court sentenced the accused to bad-conduct discharge, partial forfeitures of pay for six months, and confinement at hard labor for six months. He petitioned the convening authority for suspension of his sentence and restoration to duty. That officer took such action with the exception of the approval and ordering into execution of confinement at hard labor for two months and forfeiture of pay for a like period. As thus modified, the sentence was affirmed by the supervisory authority and the board of review. We granted accused's petition on the question whether the president erred to his prejudice by failing to afford him an opportunity to withdraw his plea after receiving evidence of three previous convictions.

In United States v Zemartis, supra, the accused also pleaded guilty to a charge of absence without leave and was informed by the president of the court-martial that, on the basis of his plea, he might be sentenced to confinement at hard labor for six months, forfeiture of two-thirds' pay for six months, and reduction to the lowest enlisted grade. After findings of guilty were announced, evidence of three previous convictions was received, and the president advised the court-martial that the sentence might also involve a bad-conduct discharge. The court thereafter included that punishment in his sentence. We reversed, stating that the failure of the president to advise the accused of the effect of possible previous convictions upon his sentence either at the time of the plea or when evidence of such convictions was introduced *"and permitting him* [an opportunity] *to withdraw his plea . . .* clearly constitutes error." (Emphasis supplied.) United States v Zemartis, supra, at page 355. Moreover, we there stated:

". . . Where, as here, the court-martial imposes a sentence more severe than that which the accused was led to believe was authorized, prejudice clearly follows.

*"The error was not cured nor was its prejudicial effect lessened by the failure of the accused to change his plea after the president instructed the court-martial that the maximum allowable punishment included a punitive discharge."* [Emphasis supplied.]

In United States v Downing, supra, we were again confronted with the same issue. In that case, the accused also pleaded guilty to an unauthorized absence and was informed that the plea could lead to the imposition of the maximum authorized sentence. After findings were announced, evidence of four convictions was received. Evidence in extenuation and mitigation was introduced, and the president announced that a bad-conduct discharge was authorized. The court included a bad-conduct discharge in its sentence. We sustained the action of the board

of review in eliminating the bad-conduct discharge from the sentence in a *per curiam* opinion, authored by Judge Latimer, stating at page 651:

"It is to be noted that when he announced the maximum sentence which could be imposed, the president did not inform the accused of the increased penalty permitted by Section B of the Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951, *and again interrogate him about withdrawing or permitting his plea to stand.* . . .

"In the recent case of United States v Zemartis, 10 USCMA 353, 27 CMR 427, a majority of the Court held that a president of a special court-martial erred when he failed to inform the accused that evidence of two or more previous offenses would subject him to a bad-conduct discharge and that, *because of the increase in punishment, he was at liberty to withdraw his plea of guilty.* While the Government seeks to differentiate the instant case from *Zemartis, we believe they are sufficiently analogous to be governed by the same principle.* Therefore, on the authority of that case, the certified question is answered favorably to the board of review's ruling." [Emphasis partially supplied.]

No opinion was written by the Court in United States v Jumpe, supra, as we granted the petition for review and reversed the decision of the board of review in a single order. However, the docket on file in the Clerk's office of this Court reflects that the case involved facts similar to those in the record now before us and, in addition, that the defense counsel specifically concurred in the president's instructions to the court-martial that a bad-conduct discharge might be imposed.

The principle involved in the foregoing cases is crystal clear. The president must either inform the accused at the time of his plea that he may receive the additional punishment of a bad-conduct discharge if evidence of two or more previous convictions is received or, when such proof is introduced, he must advise him of the permitted increase in the sentence and afford him an opportunity to withdraw his plea. One of the two courses must be followed. Neither occurred here, and there is nothing to indicate that the accused, represented only by a nonlawyer, was aware of his right so to act or that he was subject to a sentence including a punitive discharge *when he entered his plea.* True it is accused sought another chance in his testimony and that defense counsel argued that a discharge should not be imposed and that the president of the court instructed the members in accused's presence that such a penalty was permissible, but, in each of the three cases cited above, we refused to hold that these circumstances operated to purge the prejudice flowing from the president's failure to afford him a chance to withdraw his plea. This is particularly true in the *Jumpe* case where the defense counsel expressly concurred in the president's instructions and in *Zemartis* where we specifically held that the failure of the accused to change his plea when evidence of previous convictions was received did not remove the prejudicial effect of the error. In short, the essence of those cases is the rule that the accused must be aware of the possibility of receiving a bad-conduct discharge when he pleads guilty or afforded an opportunity to change his plea when the increased punishment finally is brought to his attention. If that does not appear in the record, reversal must follow. United States v Zemartis; United States v Downing; United States v Jumpe, all supra.

Turning to the principal opinion, one finds that our previous cases are held to be "distinguishable in important particulars." The subsequent discussion, however, does not indicate a single factor which supports that conclusion. Thus, it is said that, in this case, the accused's sworn testimony and defense counsel's argument indicate all were aware a bad-conduct discharge could be imposed. I call attention to the fact that, in United States v Jumpe, supra, counsel was so aware of that fact that he concurred in the president's

advice to that effect and that the same consideration was present in both the *Downing* and *Zemartis* cases. That, however, is not the issue, for these factors have no bearing on whether accused or his counsel knew he could withdraw his plea.

Finally, it is contended the accused would not have made a post-trial application for probation had he not been aware of the possibility of receiving a bad-conduct discharge. The logic involved in this argument simply escapes me. I suspect that accused's request for the suspension of his sentence was based upon the fact that he *received* a bad-conduct discharge rather than upon any knowledge during the trial that he *might* receive such a punishment.

In sum, then, I believe the distinctions said to exist between this case and our prior holdings are either irrelevant or nonexistent. Had we been concerned there solely with the question of accused's knowledge concerning the possible maximum sentence, we would not have reversed those cases. What the Chief Judge has, for some reason, chosen to overlook is the fact that *Zemartis, Downing,* and *Jumpe,* all supra, deal principally with the making of an informed plea of guilty and the opportunity to withdraw it when it appeared that a changed situation is present. I believe those cases represent good law and I would adhere to the principle for which they stand. Otherwise, we apply a philosophy which permits some accused to be punished under one set of rules while others receive their sentences under a different set of standards. This may provide "justice" in the eyes of some individuals, but it is not and never will be the application of the rule of law as we understand it in this Nation.

I would reverse the decision of the board of review and return the record of trial with instructions either to disapprove the bad-conduct discharge or to order a rehearing on the sentence, at which time the accused can be afforded a proper opportunity to change his plea.