**UNITED STATES**

v.

**Luis Angel SANTOS, 159 34 0199, Airman Apprentice (E–2), U. S. Navy.**

**NCM 77 1215.**

U. S. Navy Court of Military Review.

Sentence Adjudged 15 March 1977.

Decided 9 Nov. 1977.

LT Philip G. Cohen, JAGC, USNR, Appellate Defense Counsel.

LT Christine M. Yuhas, JAGC, USNR, Appellate Government Counsel.

Before NEWTON, GLADIS, and GRANGER, JJ.

GRANGER, Judge:

Before a general court-martial, judge alone, appellant pleaded guilty to desertion and unauthorized absence. He was sentenced to confinement at hard labor for 10 months, forfeiture of $200 pay per month for 10 months, and separation with a bad conduct discharge. In accordance with a pretrial agreement, the convening authority approved the adjudged forfeitures, 9 months confinement at hard labor and the bad conduct discharge, but suspended execution of the discharge for the period of confinement and 1 year thereafter, at which time, unless the suspension be sooner vacated, the bad conduct discharge would be remitted.

Appellant contends that the Government has breached the terms of his pretrial agreement. In support of this assignment of error, he presents documentation that administrative discharge proceedings have been initiated as a result of which appellant could be separated from the Naval service under conditions other than honorable. The basis for this action is "misconduct due to prolonged absence," pursuant to BUPERS-MAN, art. 3420185.

Appellant urges that he agreed to plead guilty in order to gain the opportunity to serve out his enlistment and thereby avoid being discharged under adverse circumstances; that, by suspending the bad conduct discharge, the convening authority implicitly assured him the opportunity to rehabilitate himself during the probationary periods; and that the Government's efforts to effect his administrative separation for the same offense to which he pleaded guilty[1] violates the implicit terms of his pretrial agreement.

The Government rejects this contention on the rationale that judicial proceedings are "separate and independent" of administrative discharge proceedings: "What the appellant bargained for in his pretrial agreement was to be released from the stigma of a *punitive* discharge . . . . What cannot be implied in the agreement is that the Navy would retain this man at all costs."

██ Unquestionably, administrative discharge proceedings are divorced from the military justice system of which this Court is a part. We are nevertheless charged with the responsibility ". . . to police the terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness." *United States v. Green,* 52 C.M.R. 10, 13, 1 M.J. 453, 456 (1976); *United States v. King,* 3 M.J. 458 (CMA 1977). We cannot abrogate that responsibility simply because our judicial decision impacts upon such administrative processes. *See United States v. Ruiz,* 23 U.S.C.M.A. 181, 48 C.M.R. 797 (1974).

The evidence before this Court convinces us that appellant and his trial defense counsel believed that the pretrial agreement assured appellant the opportunity to return to duty, effect his rehabilitation and serve out his term of enlistment. The major, and only significant, benefit which could reasonably be expected to accrue to appellant from his pretrial agreement was suspension of any discharge adjudged, as he agreed to a relatively long term of confinement and to forfeitures as adjudged, and had no rank to lose. In exchange for this suspension, he pleaded guilty to desertion—a charge which is generally recognized as being difficult to prove.

Further, the singular thrust of appellant's unsworn but unrebutted statement in extenuation and mitigation was devoted to the end of avoiding a discharge. He stated that he would accept any punishment and repeatedly requested that he be permitted to "go back to duty and prove myself," and to "serve my country honorably."

When appellant was notified of the recommendation that he be administratively discharged, his trial defense counsel wrote appellant's command, advising of her continuing post-trial duties as appellant's counsel, citing *United States v. Palenius,* 54 C.M.R. 549, 2 M.J. 86 (1977), and urging that such administrative processing was "wholly inappropriate." She wrote:

---

1. Appellate defense counsel offers no evidence showing that the "prolonged absence" which is the basis for his administrative discharge proceedings, is one of the same offenses to which he pleaded guilty in this case. BUPERSMAN, art. 3420185.1f states that prolonged authorized absence provides a basis for administrative discharge "[w]hen unauthorized continuous absence of one year or more has been established." Appellant enlisted in June, 1972. The offenses to which he judicially confessed were absence in desertion from 26 November 1972 to 1 April 1974 and unauthorized absence from 26 April 1974 to 18 August 1976. He was notified on 19 April 1977 that he was being recommended for administrative discharge. Therefore, the basis for these administrative proceedings was perforce one or both of the offenses to which appellant pleaded guilty.

The cognizant general court-martial authority . . . agreed to suspend the punitive discharge awarded by general court-martial. Processing of subject service member for the very same offenses to which he agreed to, and did plea [sic] guilty at general court-martial, deprives this service member of the benefit he was to derive from the pre-trial agreement. He is, in essence, suffering the very same punishment which he was promised would not be levied; the punishment being not only the deprivation of the benefits of an honorable type discharge, but also the opportunity to return to duty and earn such a discharge.

Counsel's importunings were rejected. Faced with administrative discharge proceedings, appellant refused to waive his rights attendant to such proceedings, requesting a hearing before a board of officers, counsel, and personal appearance.

Thus, appellant's conduct and that of his counsel, before, during and after trial, support his contention that he believed that the convening authority's agreement to suspend the execution of his discharge assured him of an opportunity to serve in the Navy and, absent further misconduct, earn remission of his discharge. His belief is not unreasonable. If common sense does not lead one to that same conclusion, as we think it should, the *Manual for Courts-Martial* certainly does. "The purpose of suspending the execution of a sentence is to grant the accused a probationary period within which he may by refraining from further misconduct earn a remission of his sentence." *Manual for Courts-Martial, United States, 1969* (Revised edition), paragraph 88e (1); *see also* paragraph 88e (2)(b).

█ It is equally clear from the evidence before this Court that appellant's understanding of the pretrial agreement is not shared by the Government. Appellant was reassigned to a different command after his trial, and the record does not reflect the understanding of the convening authority who actually entered into the pretrial agreement with appellant. The Government's position is, nevertheless, manifested by the words and actions of other Government officials, all of whom are bound by the terms of the pretrial agreement. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Trial defense counsel's remonstrations regarding the unfairness of the situation were rebuffed by appellant's superior officer who, in his reply to her letter, stated that:

The bargaining process of pre-trial agreements is based on many variables and the decision to suspend a bad conduct discharge does not necessarily evidence an intent to retain a service member. It is the position of this command that to speculate as to the rationale of pre-trial agreements on sentences is to shirk its independent responsibility . . . . Accordingly, it is the position of this command that processing in this case is not inappropriate.

Appellate Government counsel likewise sees no incongruity between the agreement to suspend the execution of a punitive discharge and processing for administrative discharge for the same offense during the probationary period.

Finally, the Bureau of Naval Personnel Manual, the provisions of which we take judicial notice in accordance with *Manual for Courts-Martial, United States, 199* (Revised edition), paragraph 147a, provides in article 3420185.1f that processing for administrative discharge by reason of misconduct due to prolonged unauthorized absence may be initiated by the Chief of Naval Personnel. The Chief of Naval Personnel also has the authority to execute administrative discharges for misconduct. BUPERSMAN, art. 3420185.1. It appears from the evidence before us that action to effect appellant's discharge has been initiated and could lead to that end, and that this action is predicated upon the same misconduct to which appellant pleaded guilty pursuant to pretrial agreement.

█ The state of the record, therefore, leads ineluctably to the conclusion that there was an honest and substantial misun-

derstanding as to the practical and legal effect of the pretrial agreement. Under these circumstances, we are compelled to take remedial action. *United States v. Hamill*, 8 U.S.C.M.A. 464, 24 C.M.R. 274 (1957).

 We need not decide whether the Government's action constituted a breach of the pretrial agreement, because we find there was no agreement. Whether the Government is correct in its assertion that it is legally permissible to administratively discharge appellant under these circumstances, or whether appellant is correct in his contention that suspension of a bad conduct discharge bars administrative separation for the same misconduct, the fact is that the parties to the pretrial agreement never reached a meeting of the minds as to the meaning of its terms. It is clear that appellant agreed to plead guilty under the belief that the two absence offenses would be put behind him and that, absent further misconduct, his eventual discharge could not be precipitated by those offenses. He was mistaken. As *United States v. Hamill, supra,* states:

> Article 45, Uniform Code of Military Justice, 10 USC § 845, provides in pertinent part that "if it appears that . . [the accused] has entered into the plea of guilty improvidently or through lack of understanding of its meaning and effect . . . the court shall proceed as though he had pleaded not guilty." While that provision does not fit this case precisely, it suggests that Congress intended an accused should not be permitted to plead guilty if there is any honest mistake inducing his judicial confession. [8 U.S.C.M.A. at 466, 24 C.M.R. at 276].

It is not clear from this record that appellant would have waived his Constitutional rights and pleaded guilty had he realized he could be subjected to administrative discharge proceedings for this same misconduct. Under these circumstances, failure to set aside his plea would denigrate the plea-bargaining process and violate "basic notions of fundamental fairness." *United States v. Green, supra.*

The findings and sentence are set aside. The record is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Senior Judge NEWTON and Judge GLADIS concur.