**UNITED STATES**

v.

**Dorsey E. BROWN, 407 06 1679, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 91 1927.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence adjudged 12 Dec. 1990.

Decided 23 Jan. 1992.

Maj G.S. WARNER, USMC, Appellate Defense Counsel.

CDR STEVEN A. CURLEE, JAGC, USNR–R, Appellate Defense Counsel.

Capt A. DIAZ, USMC, Appellate Government Counsel.

Before FREYER, Senior Judge, and HOLDER and MOLLISON, JJ.

PER CURIAM:

We have examined the record of trial, the assignment of error,[1] and the Government's reply thereto, and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

Pursuant to his pleas of guilty, the appellant was found guilty of one count of unauthorized absence, one count of larceny of jewelry valued at $2000.00, and one count of uttering a forged check in the amount of $150.00, in violation of Articles 86, 121 and

---

1. THE PRETRIAL AGREEMENT FAILED TO SET FORTH AN ESSENTIAL TERM GOVERN-ING THE BASIS UPON WHICH CONFINEMENT WOULD BE SUSPENDED.

123, respectively, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 921, 923. A military judge sitting alone sentenced the appellant to forfeitures, reduction to pay grade E–1, confinement for four months and a bad-conduct discharge. The appellant's pleas of guilty were entered pursuant to a pretrial agreement. The sentencing appendix of the agreement provided the convening authority could approve the sentence to confinement, "[h]owever, if the accused returns the jewelry . . . [to the victim], then the last 30 days of the adjudged confinement will be suspended. . . ." The appellant was sentenced on 12 December 1990. At that time he had spent 51 days in pretrial confinement to be credited against his sentence to confinement. *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984). Thus, the appellant's sentence to confinement would have run on or about 21 February 1991, without administrative credit for "good time." On 9 May 1991, the staff judge advocate issued his posttrial recommendation. Rule for Courts–Martial (R.C.M.) 1106, Manual for Courts–Martial, United States, 1984. In that recommendation the staff judge advocate informed the convening authority that the appellant had not made restitution and, therefore, the convening authority was not required to suspend any of the confinement adjudged. The staff judge advocate's recommendation was served on trial defense counsel on 21 May 1991.[2] The record contains no comments or objections from trial defense counsel. *See* R.C.M. 1106(f). On 7 June 1991, the convening authority took his action and approved the sentence as adjudged. The record is devoid of any posttrial matters submitted by the appellant to the convening authority demonstrating that the appellant had made or arranged restitution. R.C.M. 1105. In fact, the appellant does not now assert that he ever made restitution. Nonetheless, he maintains: (1) that because he was confined it was impossible for him to make restitution, (2) that the agreement was ambiguous as to *when* he must make restitution in order to be entitled to the benefit of the agreement,

and (3) that the matter was not clarified on the record by the military judge. The appellant, who apparently never returned the jewelry he stole or compensated the victim for it, now boldly asserts that the Government has failed to carry out its part of the bargain. Finding specific performance impossible at this time, the appellant urges the Court to set aside the findings of guilty and sentence, return the record to the convening authority, and order that the appellant be permitted to withdraw his guilty pleas.

█ Pretrial agreements are authorized in courts-martial. R.C.M. 705(a). A promise to provide restitution is expressly recognized as an authorized provision of a pretrial agreement. R.C.M. 705(c)(2)(C); *United States v. Olson*, 25 M.J. 293 (C.M.A.1987). As a part of the military judge's inquiry into the providence of the guilty plea, the military judge must ensure the parties understand the terms of the pretrial agreement and agree to them. R.C.M. 910(f)(4); *United States v. Green*, 1 M.J. 453 (C.M.A.1976). If the pretrial agreement contains any unclear or ambiguous terms, the military judge should obtain clarification from the parties. Discussion, R.C.M. 910(f)(4); *United States v. Rascoe*, 31 M.J. 544 (N.M.C.M.R.1990). "A defective plea bargain inquiry is an error which must be tested for prejudice." *United States v. Nebling*, 26 M.J. 774, 775 (N.M.C.M.R.1988). If the Government violates the pretrial agreement, the accused is entitled either to specific performance or to an opportunity to withdraw his guilty pleas. *United States v. Albert*, 30 M.J. 331, 332 (C.M.A.1990). Here, the military judge discussed the restitution-suspension provision of the pretrial agreement with the appellant and counsel, however, the parties did not discuss the date by which the appellant would have to perform restitution. Record at 43. Thus, neither the agreement nor the transcript flesh out this particular.

---

**2.** The appellant requested that his copy of the record of trial and staff judge advocate's recom- mendation be served on his trial defense counsel. Record at 43; R.C.M. 1106(f)(1).

■ The inquiry into the plea bargain is, of course, intended to be more than a mantra. One of its objectives is to clarify a detail of the nature the appellant now raises. Having said as much, we must be prepared to address issues that escape the attention of the participants at trial and determine what is just under all the circumstances. "[I]t is customary in military law for an accused and his counsel to propose the terms of a pretrial agreement—generally, in writing—so the failure to state a specific deadline for performance cannot be laid solely at the Government's door." *United States v. Koopman*, 20 M.J. 106, 110 (C.M.A.1985). The preferred course of action is for the agreement to specify the time for performance of a post-trial act by the accused. Failing that, the trial court and counsel should attend to clarification of the time on the record. Failing that, it is proper to imply in a plea bargain agreement that requires the performance of an act or the satisfaction of a condition post-trial by an accused in order to obtain a benefit, that the act must be performed or the condition satisfied within a reasonable time after trial and before the benefit is received. *Id.*

■ What is a reasonable time for performance of a post-trial act will depend on the circumstances of the case, including the nature of the act to be performed, the feature of the sentence to be affected, and the time at which that feature is to be affected. We also believe the post-trial course of conduct of the parties may be instructive in determining their intent. In order to have the last 30 days of his sen-

tence to confinement suspended, the appellant agreed to return the jewelry he had obtained by false pretense or pay the monetary equivalent.[3] Accordingly, one may fairly and reasonably imply that the act of restitution would have had to have been performed before the appellant commenced service of his sentence to the last 30 days of confinement. Thus, the appellant had well over one month after trial to arrange the return of the jewelry or compensate the victim. If the convening authority had not yet acted, the appellant could have requested a deferment of confinement. R.C.M. 1101(c). If it appeared that the convening authority was going to take action before that time and thus thwart suspension, the appellant could have requested the convening authority delay taking action.[4] In this case, the convening authority took action well after the period of adjudged confinement would have run, and the record is devoid of any matter suggesting the appellant took any action to carry out restitution or to avoid service of the last 30 days of confinement. It may not be fairly implied that the appellant was to be given an infinite amount of time to make restitution or have his sentence suspended without *first* satisfying the condition precedent, namely restitution. Accordingly, we find: (1) the appellant failed to satisfy, within a reasonable time after trial, the post-trial condition that would have resulted in suspension of the last 30 days of his confinement, (2) any defect in the plea bargain inquiry did not prejudice the appellant, and (3) the convening authority properly ordered executed the adjudged sentence to confinement.[5]

3. When the agreement was entered into, the parties would not have known what sentence to confinement, if any, the court might award. Therefore, when the "last 30 days" would be was not known at that time. The "last 30 days" would only be known after the appellant had been sentenced.

4. A pretrial agreement binds not only the convening authority but also the party which the convening authority represents, *i.e.*, the Government. *United States v. Santos*, 4 M.J. 610 (N.C.M.R.1977). A pretrial agreement which includes a term that is beyond the capacity of the convening authority to fulfill may, nonetheless, be saved by action to comply with the pretrial agreement taken by higher authority. *United*

*States v. Bedania*, 12 M.J. 373 (C.M.A.1982). Consequently, in an appropriate case of this nature, any unserved confinement required by the pretrial agreement to be suspended could be suspended by, among others, the officer exercising general court-martial jurisdiction over the accused even after it had been ordered executed by the convening authority. Article 74(a), UCMJ, 10 U.S.C. § 874(a); JAG Instruction 5800.7C of 3 October 1990, Manual of the Judge Advocate General (JAGMAN), §§ 0158, 0159.

5. We also reject appellant's claim he could not have made or arranged restitution because he was confined. He was confined when he offered the agreement. Confinement alone would

The findings and sentence, as approved on review below, are affirmed.

not necessarily preclude his arranging to return the jewelry. Appellant provides no explanation of why he could not return the jewelry and we are not inclined to accept his unsubstantiated assertion that confinement alone prevented it.