UNITED STATES, Appellee

v

JAMES D. ANDERSON, Private, U. S. Marine Corps, Appellant

8 USCMA 603, 25 CMR 107

No. 10,129

Decided January 17, 1958

*Major R. D. Humphreys*, USMC, argued the cause for Appellant, Accused.

*Lieutenant (jg) John V. L. Ellicott*, USNR, argued the cause for Appellee, United States. With him on the brief was *Commander Guilbert W. Martin*, USN.

### Opinion of the Court

HOMER FERGUSON, Judge:

Appellant was found guilty in accordance with his plea of two specifications of absence without leave and one specification alleging failure to obey a lawful order, in violation of Articles 86 and 92, Uniform Code of Military Justice, 10 USC §§ 886, 892, respectively. No evidence was presented on the merits. After the court had announced its findings, the president of the special court advised trial counsel that he could read the data shown upon the charge sheet and present evidence of previous convictions if any such evidence existed. After reading the charge sheet, trial counsel was sworn as a witness and testified, as custodian of the accused's service record, concerning one previous conviction. The president then explained to the accused his rights in extenuation and mitigation, which included an explanation that the prosecution could "offer evidence to re-

but anything contained in the statement," which statement could be made by the accused or his counsel, could be oral or in writing, or could be sworn or unsworn. The accused elected to have his counsel make a statement in his behalf. For the sake of completeness, the statement is quoted in its entirety:

"While interviewing Private Anderson, Staff-Sergeant McIntrye, the brig warden at Parris Island, came to me and stated that he thinks the accused is good Marine Corps material and that he did excellent work while in the brig at Parris Island. We have had letters from Anderson's mother. She said Anderson had some problem, she doesn't know what it is. She said he has been increasingly nervous in the past few weeks. She requested that a doctor give him an examination. While Anderson was a prisoner in Atlanta, there was a break-out in the brig in Atlanta in which three people left. Anderson had an opportunity to leave at that time but he stayed because he wanted to come back and stand trial for the offense he had committed. He did not realize the seriousness of the offense and now he can understand the seriousness of what he has done. If given another opportunity, Private Anderson will do everything in his power to become a valuable asset to the Marine Corps. Staff Sergeant McIntrye stated to me that he thought he could be valuable to the Marine Corps."

The president then inquired of trial counsel whether he had anything further to say and trial counsel made the following statement to the court:

"In closing, I would like to point out that the accused was transferred to this station and was UA upon arrival at this base. He was given summary courts-martial and confined to the brig at Parris Island. The sentence was reduced 23 December 1955 and the accused was granted liberty. The Officer of the Day and the Duty Sergeant explained the seriousness of unauthorized absence and advised him to get back on time after Christmas week-end. He did not return from this liberty. Anderson was apprehended and confined at Atlanta and a guard was sent to bring him back. He was again confined to wait trial. Anderson was examined by a doctor. The doctor states he knows right from wrong and is able to adhere to the right and participate in his own defense."

The court then closed to deliberate on sentence and upon reopening some twenty minutes later announced a sentence which included bad-conduct discharge, partial forfeitures for four months, and confinement at hard labor for a like period. The board of review affirmed the findings and sentence without opinion.

The accused urges upon us a claim of prejudice by reason of the unsworn testimony of trial counsel which he contends focused the court's attention upon aggravating circumstances not in evidence. He argues that paragraph 75, Manual for Courts-Martial, United States, 1951, affirmatively requires the prosecution to adduce evidence to rebut anything contained in the sworn or unsworn statement of an accused offered in evidence and that an unsworn statement which introduces aggravating circumstances is not permissible. United States v Carter, 1 USCMA 108, 2 CMR 14. The Government responds with the observation that the trial counsel had been sworn as a witness for the purpose of introducing evidence of previous convictions and that his closing statement was merely factual testimony given under oath. United States v Lowery, 2 USCMA 315, 8 CMR 115. Furthermore, it is contended that matters contained in the closing statement were merely cumulative of matters already before the court and found either in the specifications to which the accused had pleaded guilty or in the evidence of previous convictions.

We believe the trial counsel's statement exceeded the proper bounds of argument. Although it is conceded that portions of his statement could be traced directly to evidence properly before the court, there were other

portions which represent unsworn testimony concerning new matter not in evidence. While it is true that trial counsel can make a separate argument on the appropriateness of sentence, such argument "must be based upon the evidence adduced at the trial, and it cannot 'go beyond the bounds of fair argument.'" United States v Olson, 7 USCMA 242, 22 CMR 32. The reasonable inference which can be adduced from trial counsel's statement was that the accused was completely unworthy of any further rehabilitative efforts because he had failed to heed the disciplinary admonishments and advice given him regarding the seriousness of his prior conviction of the same offense for which he was then being tried. The court-martial might well have concluded that the accused having once been guilty of a breach of faith would do so again were the opportunity to present itself. Additionally, the trial counsel's remarks concerning the accused's psychiatric examination were hearsay pure and simple and were obviously an attempt to rebut defense counsel's remarks regarding the accused's "nervous" condition. Furthermore, we believe that trial counsel had been relieved of his oath when he argued to the court on the sentence. Cf. United States v Lowery, supra. The matter contained in his statement could properly have been brought to the court's attention by merely calling the witnesses themselves to testify.

Although defense counsel voiced no objection to the trial counsel's statement, we are not inclined to apply the doctrine of waiver in special court-martial cases such as the present where counsel are nonlawyers and obviously not trained to either recognize the error involved or intelligently waive its harmful effects. United States v Kelly, 7 USCMA 584, 23 CMR 48. In view of the conclusion we reach, reversal is required. The error, however, extends only to the sentencing phase of the trial and corrective action may be accomplished by returning the case to the level of the proceedings where the error occurred to permit the court-martial to reconsider the sentence. The findings of guilt are hereby affirmed. The

606

sentence is set aside and a rehearing on the sentence is ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

Apparently the holding in this case veers toward my dissent in United States v Lowery, 2 USCMA 315, 8 CMR 115. At least my associates find that trial counsel was arguing in the capacity of an advocate and not as a sworn witness. I, therefore, treat him as being in that status.

This case was tried before a special court-martial and the error, if any, arose out of arguments on sentence. It must be confessed that paragraph 75c (2) of the Manual permits the Government to introduce evidence in rebuttal of mitigating facts presented in an unsworn statement of the accused or his counsel. But that is not to say that arguments cannot answer arguments and that is what substantially occurred here. In connection with arguments, both sides ought to be allowed some latitude in their comments and trial counsel's conduct should not be weighed in an analytical balance and defense counsel's on platform scales. If defense counsel argues outside the limits of the record, trial counsel ought to be entitled to answer or explain. Otherwise, for all practical purposes the unsworn statements of the defense become untouchable. Here the matters mentioned by trial counsel were in the record or were in reply to the arguments made by defense and, hence, I lean to the belief that there was no error.

Regardless of the views hereinbefore expressed, for the purpose of this case, I am willing to assume trial counsel erred, but that is just the starting point. The accused was charged with and convicted of three offenses for which the maximum sentence imposable, had this case come before a general rather than a special court-martial, was a bad-conduct discharge, total forfeitures and eighteen months' confinement. He was sentenced to a bad-conduct discharge, forfeiture of $38 per month for four months and confinement

for the same period of time. Two of the offenses in the case at bar were absences without leave from December 26, 1956, to January 4, 1957, and January 5, 1957, to January 10, 1957, to which he entered a plea of guilty. Prior to sentence, there was introduced into evidence a record of a previous conviction which showed a finding of guilty to an absence without leave from November 10, 1956, to November 28, 1956. In that instance accused was sentenced to confinement and he finished his term of incarceration just before Christmas of that year and only three days before the first offense in issue in this case. The question, therefore, is this: In the posture of this record, is there a fair likelihood that the sentence was affected by the two statements that the officer of the day and a duty sergeant explained to the accused the seriousness of not returning from Christmas liberty and that a doctor had examined the accused and stated that he was legally sane?

In answer to the first part of the question, I have reason to believe that every recruit who enters the service is told of the seriousness of being absent without leave and this accused had been forcefully impressed to that effect. Therefore, I find nothing of sufficient importance to affect a sentence in a statement that an accused, who has just been released from the brig and forfeited part of a month's pay for a previous unauthorized absence, has been informed by his superiors about the seriousness of a subsequent violation of the same nature.

The second statement is trial counsel's reference to accused's examination by a doctor. Defense counsel had referred to his client's nervous condition and to the request of his mother for a physical examination. Trial counsel answered by saying he had been given an examination and the doctor said he, the accused, was sane. In the absence of any testimony to the contrary, an accused is legally presumed sane and so the comment was no more than that a doctor had stated what the court was required to presume.

Sometimes much can be made of trivial incidents which occur in criminal trials and, in my opinion, the present decision goes too far in that direction. Certainly in special courts-martial defense counsel cannot be expected to reach the level of a trained lawyer but they ought to have an ear for statements which are false, inflammatory or unfair. Here there is no claim that trial counsel misrepresented a single fact and the claim of prejudicial error is asserted for the first time on appeal. I can understand that, for in my judgment the sentence imposed in this case was not influenced in the slightest by trial counsel's comment. No doubt a military record which showed a recidivistic absentee who refused to serve is solely the basis for the punishment imposed. Certainly, in the light of three separate absences, at least two of which commenced the day following accused's involuntary return to the service, any possibility of prejudice from the arguments is simply nonexistent.