UNITED STATES, Appellee

v

CLIFFORD L. TAYLOR, Private First Class, U. S. Marine Corps, Appellant

15 USCMA 565, 36 CMR 63

No. 18,712

December 23, 1965

*Captain L. G. Bohlen*, USMC, argued the cause for Appellant, Accused. With him on the brief was *Commander Walter F. Brown*, USN.

*Lieutenant Colonel Daniel F. McConnell,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

KILDAY, Judge:

Appellant was originally charged with two offenses allegedly committed on October 17, 1964, which were sworn to on October 23, 1964. Subsequently, appellant was charged with nine additional offenses allegedly committed on November 6, 7, 10, 13 and 14, 1964, respectively. Neither the charge sheet on which the accused was formally charged with these additional offenses nor the record of trial contains any evidence that these additional charges were sworn to. The Government concedes that they were not.

The additional charges, except one thereof, were served upon the appellant more than one month before trial, and the remaining charge served upon him on the day of the trial. As to the latter offense, appellant waived the three-day waiting period.

When arraigned, the appellant pleaded guilty to the two original charges and not guilty to all of the remaining charges and specifications. He was found guilty of a number of the additional charges and not guilty of others. After action by the intervening reviewing authorities, as the case reaches us, appellant stands convicted of one of the original sworn-to charges, which alone will support the sentence assessed, and several of the unsworn additional charges and specifications. Appellant stands sentenced to bad-conduct discharge, confinement at hard labor for six months, partial forfeitures, and reduction.

Neither prior to plea nor at any subsequent time did the appellant raise the question that the additional charges were not signed or sworn to. Upon the presentation of his petition for review to this Court, without assignment of any error but upon the merits, we elected to hear the appeal, specifying the following issue:

"Whether the accused was prejudiced by being tried on unsworn (additional) charges and specifications."

Article 30(a) of the Uniform Code of Military Justice, 10 USC § 830, provides in part:

"Charges and specifications shall be signed by a person subject to this chapter under oath before a commissioned officer of the armed forces authorized to administer oaths. . . ."

Paragraph 29e, Manual for Courts-Martial, United States, 1951, provides:

"In no case may an accused be tried on unsworn charges *over his objection.*" [Emphasis supplied.]

In the early general court-martial case of United States v May, 1 USCMA 174, 2 CMR 80, this Court gave consideration to the quoted provisions of the Code and the Manual for Courts-Martial. There we stated:

"In view of the requirements of Article 30, and of the admitted fact that the officer was not authorized to administer oaths, it is plain that there was error, and that the procedure was not in accordance with the provisions of the Article and of the Manual. Of this there is no doubt. But this is not decisive of the issue in this case. The question is, did the error substantially prejudice the rights of the accused?

"The federal courts have been called upon frequently to consider this same kind of question in construing the provisions of the Federal Rules of Criminal Procedure. They have uniformly held that failure to object to an error of this kind constitutes a waiver, as the defect is one of form rather than substance. No objection was made at the time of trial. If the error in this case was one of form, timely objection was required."

The Court then referred to the above-quoted Manual provision, adverted to similar provisions in preceding Manuals, and proceeded:

"The procedure in this case was not strictly in accord with the law or provisions of the Manual. It was error and should not be repeated. But it did not materially affect the substantial rights of the accused."

In United States v Marcy, 1 USCMA 176, 2 CMR 82, decided the same day as United States v May, supra, the Court had before it a case tried before a Navy special court-martial. In that instance this Court said:

"The only distinction between this case and the May case is that in this case additional charges were added to a previously prepared charge sheet, without swearing to such additional charges,[1] as required by Article 30 (a), Uniform Code of Military Justice, 50 USCA § 601, while in the May case, the charge was sworn to before an officer not authorized to administer an oath. As we said in the May case, in view of the dual requirement that a charge be sworn to before an officer authorized to administer oaths, we see no substantial difference between a failure to swear, or the swearing before an officer not authorized to administer an oath.

"Therefore, in accordance with our views in the May case, we hold that the procedure herein was error and not in accordance with Article 30 (a) and the provisions of the Manual. But we hold that such error was not prejudicial and did not affect the substantial rights of the accused. Timely objection is certainly required to take advantage of any such error. There was no such timely objection here."

In United States v Smith, 8 USCMA 178, 23 CMR 402, this Court cited, quoted from, and expressly approved its holding in United States v Marcy, supra.

Before the enactment of the Uniform Code of Military Justice and the creation of this Court, our holding in the *May* and *Marcy* cases had been established, under an identical statutory provision, as military law. Thus, in

[1] The identical situation exists in the present case.

Digest of Opinions of The Judge Advocate General of the Army, 1912–1940, section 428(7) (1932), we find:

". . . That the requirement of A. W. 70 that charges be supported by the oath of the accuser, being procedural, and for the benefit of the accused, does not affect the jurisdiction of the court and may be waived by the accused either explicitly or by failure to object to the irregularity."

In United States v Johnson, 72 BR 317, 340 (1947), an Army board of review stated:

". . . The fact that Captain Mann was not sworn and that he indicated his disbelief in the truth of the allegations do not operate to invalidate the proceedings. The Jurisdiction of the court is not predicated upon compliance with the provisions of Article of War 70 relating to the preferring of charges. Such provisions are administrative and directory in character and it was the function of the court-martial to determine the question of the guilt or innocence of the accused. (CM 210612, *Maddox,* 9 BR 277–281; CM 268240, *Closson,* 44 BR 235, 238; CM 280385, *Warnock,* 17 BR (ETO), 163, 180.)"

See also the decision on this question by an Air Force board of review in United States v Cox, 3 CMR(AF) 270, 289–90 (1950). And see United States v Aikins, 5 BR-JC 331, 345, 379 (1949).

Former Article of War 70, enacted by Congress in 1920 (41 Stat 787, 802) provided:

"Charges and specifications must be signed by a person subject to military law, and under oath. . . ."

In the administration and interpretation of that provision, those within the military charged with that responsibility had held, as exemplified by the cases herein cited, that the requirement that charges and specifications be under oath was administrative and directory, and may be waived by failure to object to the irregularity.

It is significant that, such interpretation having been in existence over a

long period of time, the Congress saw fit to reenact practically the identical language in Article 30(a), Uniform Code of Military Justice, supra, by the provision:

"Charges and specifications shall be signed by a person subject to this chapter under oath. . . ."

United States v Davis, 12 USCMA 576, 31 CMR 162; United States v Scheunemann, 14 USCMA 479, 34 CMR 259; Crawford, The Construction of Statutes, section 219 (1940); Black, Handbook on the Construction and Interpretation of the Laws, section 94 (1911).

In United States v May, supra, we mentioned that the Federal courts have been called upon frequently to consider questions similar to trial on unsworn charges, and have uniformly held that failure to object to an error of this kind constitutes a waiver, as the defect is one of form rather than substance. In support of this statement, reference was there made to Annotations to Rule 7, Federal Rules of Criminal Procedure (18 USCA, pages 142, 168, 178). In addition, serious consideration should be given to Rule 12 of said Rules. Comparison of Rule 12 to paragraph 67b, Manual for Courts-Martial, United States, 1951, will be profitable.

Rule 12(b)(2) and (3), Federal Rules of Criminal Procedure, read:

"(2) *Defenses and Objections Which Must Be Raised.* Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

"(3) *Time of Making Motion.* The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter."

Paragraph 67b of the Manual, supra, provides:

"**Defenses and objections which must be raised.**—Defenses and objections based on defects in the preferring of charges, reference for trial, form of the charges and specifications, investigation, or other pretrial proceedings other than objections going to the jurisdiction of the court or the failure of the charges to allege an offense may be raised only by a motion for appropriate relief before a plea is entered. Failure to present any such objection prior to plea constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver."

That Rule 12 served as the pattern for paragraph 67b seems probable, if not self-evident. We have heretofore had occasion to observe that Section 3771, Title 18, United States Code, granting the Supreme Court power to prescribe rules of pleading, practice, and procedure in Federal Courts is similar to or identical with Article 36, Uniform Code of Military Justice, 10 USC § 836, granting the President power, by regulation, to prescribe the procedure, including modes of proof, of courts-martial. We have also observed that such rules prescribed by the Supreme Court and regulations prescribed by the President have the force of law. United States v Smith, 13 USCMA 105, 32 CMR 105.

It has been held that the issue as to whether the defendant had been denied his constitutional right to the equal protection of the laws and to due process by the systematic exclusion of members of his race from the grand jury which indicted him (as distinguished from the petit jury which tried him) was waived by failure to raise such question at trial. United States v Harpole, 263 F2d 71, 84 (CA 5th Cir) (1959). See Poliafico v United States, 237 F2d 97, 110 (CA 6th Cir) (1956). Of all the cases in the Supreme Court on this

question, diligent search on our part has failed to locate a single case in which that Court has held an indictment vulnerable in which the question was not raised at trial. In Eubanks v Louisiana, 356 US 584, 2 L ed 2d 991, 78 S Ct 970 (1958), Mr. Justice Black observed that in an unbroken line of cases the Supreme Court had held a criminal defendant is denied equal protection of the laws if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race. In support of his statement Justice Black cited sixteen cases. We have examined each thereof and find that in each and every one the issue was raised at trial.

If a constitutional right as jealously guarded as this may be waived, surely a statutory provision, as exists in the military, can be protected by no more stringent rule.

Finally, we consider as dispositive of the issue before us the case of Humphrey v Smith, 336 US 695, 93 L ed 986, 69 S Ct 830 (1949). There the Supreme Court had before it a case in which the respondent was convicted by an Army court-martial and sentenced to imprisonment for life. He sought release by habeas corpus challenging the validity of the conviction because of a failure to comply with the provision of former Article of War 70 that "No charge will be referred to a general court-martial for trial until after a thorough and impartial investigation thereof shall have been made."

It is to be noted that prior to 1920 there was no requirement for such an investigation, nor was it required that charges and specifications be under oath. In 1920 Congress enacted 41 Stat 787, supra, containing many revisions of the Articles of War. Article 70 thereof contained some four provisions which have been carried forward into the Uniform Code of Military Justice, but dispersed into several Articles thereof. The first paragraph of Article of War 70 therein read:

"Charges and specifications must be signed by a person subject to military law, and under oath. . . ."

The next ensuing paragraph of the same Article provided:

"No charge will be referred for trial until after a thorough and impartial investigation thereof shall have been made."

It will be observed that each provision was, at least, equally mandatory, unless the second be deemed to be more imperative in that it creates a condition precedent to the referral of charges.

In disposing of the issue presented in Humphrey v Smith, supra, Mr. Justice Black stated:

"We do not think that the pretrial investigation procedure required by Article 70 can properly be construed as an indispensable prerequisite to exercise of Army general court-martial jurisdiction. The Article does serve important functions in the administration of court-martial procedures and does provide safeguards to an accused. Its language is clearly such that a defendant could object to trial in the absence of the required investigation. In that event the court-martial could itself postpone trial pending the investigation. And the military reviewing authorities could consider the same contention, reversing a court-martial conviction where failure to comply with Article 70 has substantially injured an accused. But we are not persuaded that Congress intended to make otherwise valid court-martial judgments wholly void because pretrial investigations fall short of the standards prescribed by Article 70. That Congress has not required analogous pretrial procedure for Navy courts-martial is an indication that the investigatory plan was not intended to be exalted to the jurisdictional level.

"Nothing in the legislative history of the Article supports the contention that Congress intended that a conviction after a fair trial should be nullified because of the manner in which an investigation was conducted prior to the filing of charges. Its original purposes were to insure adequate preparation of cases, to guard against hasty, ill-considered charges, to save innocent persons from the

stigma of unfounded charges, and to prevent trivial cases from going before general courts-martial. War Department, Military Justice During the War, 63 (1919). All of these purposes relate solely to actions required in advance of formal charges or trial. All the purposes can be fully accomplished without subjecting court-martial convictions to judicial invalidation where pretrial investigations have not been made."

In view of the fact that the provision for investigation prior to referral to trial, and the provision that charges and specification be under oath, were adopted by Congress at the same time and in the same paragraph, and in the light of the language of the Supreme Court last quoted, we agree with the reasoning of the board of review in United States v Westergren, 14 CMR 560, 584 and 585:

"Historically, the purpose of having charges subscribed and sworn to was to prevent the preferring of frivolous or baseless charges (Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 150–154, footnotes 18, 19; CM 172002, Nickerson, cited in CM 229477, Floyd, 17 BR 149 at p 154). Initially, no oath to the charges was required, the commanding officer merely certifying by indorsement on the charge sheet that he had personally investigated them and that, in his opinion, the charges could be sustained (Winthrop, *supra,* p 1037, quoting Extracts from Army Regulations of 1895, Sec 928; Dudley, Military Law and the Procedure of Courts-Martial, 3d ed, pars 123, 124). Prior to the Code of 1920 (Chap II of the Army Reorganization Act of June 4, 1920, 41 Stat 787), charges and specifications were not required to be sworn to, but by custom of the service were formally preferred by a commissioned officer who authenticated the same by his signature thereto. The Code of 1920 (AW 70) introduced the requirement that all charges and specifications be preferred under oath, and provided that they may be preferred by any person subject to military law, thus doing away with the prior custom of the service requiring them to be signed by a commissioned officer. . . .

". . . Despite the seemingly imperative language of the Manuals, the Articles of War, and the Uniform Code concerning the necessity of the signature and appropriate oath to the charges, it has long been held that the failure to sign and swear to charges is not a fatal defect and the omission thereof may be waived by an accused by failure to make timely objection (Dig Ops JAG, 1912–40, Sec 428(7), page 296; CM 210612, Maddox, 9 BR 277; CM 288951, Burton, 57 BR 23; CM 337089, Aikins (BR), 9 BR-JC 331, 345–348, (JC) 379; ACM 1311, Thornton (BR), 2 CMR(AF) 553; US v May (No. 241), 1 USCMA 174, 2 CMR 80; US v Marcy (No. 260), 1 USCMA 176, 2 CMR 82). In our view, the presence of the signature and oath to charges is a safeguard furnished to an accused with which, by timely objection at the trial, he may protect himself from prosecution upon unfounded, frivolous or malicious charges."

In light of the foregoing discussion, we repeat that it is error to try accused on unsworn, unsigned charges, as the procedure does not comport with the provisions of the Code and the Manual. And we point out that defects of this sort could easily be obviated were those processing charges to exercise more care in discharging their duties. Compliance with the prescribed procedures is not difficult, and is to be expected. However, as is apparent from our views expressed hereinbefore, we hold that the defect was not prejudicial and did not affect the substantial rights of the accused in the case at bar. Timely objection is necessary to take advantage of such irregularities.

We adhere to our holdings in United States v May, United States v Marcy, and United States v Smith, supra, and, accordingly, affirm the decision of the board of review.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I had thought it well settled in this Court that the doctrine of waiver would not be applied in those special courts-martial in which the accused was represented by a layman, as opposed to having as his advocate a qualified attorney, who would recognize the importance attached to the requirement of the Uniform Code of Military Justice that charges be signed by a person subject to the Code, under oath that he "has personal knowledge of or has investigated, the matters set forth therein; and . . . that they are true in fact to the best of his knowledge and belief." Code, supra, Article 30, 10 USC § 830. My brothers, however, take a contrary view, and, treating the absence of any oath or signature to the charges in question as a purely formal matter, impute to the appointed defense counsel—a Marine lieutenant—a legal acumen which years of experience have shown simply does not exist on the part of line officers untrained in the law. I cannot agree either that this is merely a formal matter or that the doctrine of waiver ought to be invoked when the accused is not represented by qualified counsel. If such is to be the case in special courts-martial, then there is justification indeed for the observation that "it may be repugnant to minimal requirements of due process, even in the military service, for the juridically blind to lead the blind." In re Stapley, 246 F Supp 316 (DC Utah), decided October 1, 1965.

It is not contested in this case that all the charges and specifications except the original count are both unsigned and unsworn by any accuser. They consist of no more than the allegation of several "specifications" on a piece of paper stapled inside the original charge sheet, and the dates on which the offenses were alleged to have been committed are later than that of the jurat thereto. The staff legal officer noted such to be the case in his post-trial review and, as the majority opinion states, the Government concedes the error at this level. In short, as my brothers and I have stated, there is presented on the face of the record a clear and brazen violation of the positive command of the Congress in Code, supra, Article 30.

In my view, departures from statutory norms may not be easily brushed aside, particularly on the basis that the violations were not recognized below by one lacking any legal training. Speaking of the applicability of a harmless error statute in the Federal courts, the Supreme Court noted these enactments were designed to eliminate the criticism that appellate courts " 'tower above the trial of criminal cases as impregnable citadels of technicality,' " but concluded such legislation was not designed to sanction departures from legislative commands. Kotteakos v United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239 (1946). See also my separate opinion in United States v Cruz, 10 USCMA 458, 28 CMR 24, at page 463. And it is clear that lack of any verification or signature upon a charging instrument is no "technicality" in the eyes of our highest Federal tribunal.

Commencing with an era in which many of our Founding Fathers were yet alive, the requirement for an oath in connection with criminal charges has been consistently maintained. Ex parte Burford, 3 Cranch 448 (U.S. 1806); Rice v Ames, 180 US 371, 45 L ed 577, 21 S Ct 406 (1901). And where an indictment was altered after its return, the Supreme Court declared such to be void, as not presented upon the oaths of the grand jurors, and stated its amendment deprived the trial court of the power to proceed further. Thus, it said:

". . . It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime; for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the Constitution,

**571**

can be 'held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a *nolle prosequi* had been entered. There was nothing before the court on which it could hear evidence or pronounce sentence." [Ex parte Bain, 121 US 1, 13, 30 L ed 849, 7 S Ct 781 (1887).]

In Albrecht v United States, 273 US 1, 71 L ed 505, 47 S Ct 250 (1927), the same tribunal again noted, at page 8:

". . . A person may not be punished for a crime without a formal and sufficient accusation even if he voluntarily submits to the jurisdiction of the court."

And in United States v Morgan, 222 US 274, 56 L ed 198, 32 S Ct 81 (1911), it declared:

". . . [A]s to this and every other offense, the 4th Amendment furnishes the citizen the nearest practicable safeguard against malicious accusations. He cannot be tried on an information unless it is supported by the oath of someone having knowledge of facts showing the existence of probable cause. Nor can an indictment be found until after an examination of witnesses, under oath, by grand jurors, —the chosen instruments of the law to protect the citizen against unfounded prosecutions, whether they be instituted by the government or prompted by private malice." [*Morgan,* supra, at page 282.]

See also United States v Glasser, 116 F2d 690, 695 (CA 7th Cir) (1940), and United States v Williams, 203 F2d 572 (CA 5th Cir) (1953).

Of course, prosecution by indictment is not required in military courts, as such are expressly excepted from the terms of the Fifth Amendment. Reid v Covert, 354 US 1, 1 L ed 2d 1148, 77 S Ct 1222 (1957). But I suggest Congress sought similarly to protect members of the armed services from baseless accusations by providing them

with the shield of oath and signature as to every criminal charge leveled against them. Code, supra, Article 30. When referred to trial, we have compared the charges to an information or indictment. United States v Johnson, 12 USCMA 710, 31 CMR 296; United States v Rodgers, 8 USCMA 226, 24 CMR 36. And even the information, when utilized as a basis for prosecutions in the Federal courts, is said to be guaranteed by the oath of the United States District Attorney that he will well and faithfully fulfill the duties of his office. Albrecht v United States, supra. Hence, it will be seen we deal here with no merely formal omission but with the absence of those guaranties by which Congress sought to protect the accused and which have the effect of turning a mere piece of paper into a criminal pleading which he is required to answer before a court of the United States.

The absence of these safeguards, as prescribed by Congress, may not constitute jurisdictional error, see Frisbie v United States, 157 US 160, 39 L ed 657, 15 S Ct 586 (1895), but it, in my opinion, makes out such a substantial departure from the requirements laid down in the Code that cognizance thereof should be taken at this level, as a matter of course, when the accused is defended by an unqualified officer and has not had the benefit of the advice and guidance of an attorney at the trial level.

It is this aspect of my brothers' view with which I most strongly disagree. In United States v Moore, 4 USCMA 675, 16 CMR 249, we, when faced with an error affecting the qualifications of a court member, declared, "because this was a special court-martial trial and accused was represented by a non-lawyer, we do not consider the doctrine of waiver applicable." *Id.,* at page 677. And in United States v Pinkston, 6 USCMA 700, 21 CMR 22, at page 706, we again said:

". . . We have earlier and repeatedly recognized the fact that, for the most part, defense counsel appearing before special courts-martial are not qualified attorneys

any more than is the president—certainly they need not be under the law. We have always been unwilling to charge against accused persons waivers based on the conduct of counsel of this description."

See also United States v Beer, 6 US CMA 180, 19 CMR 306; United States v Kelley, 7 USCMA 584, 23 CMR 48; United States v Silva, 8 USCMA 105, 23 CMR 329; United States v Williams, 8 USCMA 443, 24 CMR 253; United States v Anderson, 8 USCMA 603, 25 CMR 107; United States v Hill, 9 US CMA 10, 25 CMR 272; and United States v Johnson, 14 USCMA 75, 33 CMR 287.

The foregoing does not purport to be a complete listing of the cases in which we have consistently refused to apply the doctrine of waiver in light of the fact that the accused was not represented by counsel with legal training. It is sufficient, however, to indicate our long recognition of the fact such advocates are "obviously not trained to either recognize the error involved or intelligently waive its harmful effects." United States v Anderson, supra, at page 606. I yet maintain that view, based as it is on the review of thousands of special court-martial records over the past years, and add my belief that insistence upon full review of such trials, despite the lack of objection, is the only course open to us to insure fairness in the proceedings below. Once the doctrine of waiver is invoked in face of the fact that the accused was represented before the court-martial by a layman, the door is fully opened to all the abuses in the administration of military justice which existed in the past. In short, lacking such review, justice will fail because of the shortcomings of a nonlawyer and not because of any course deliberately or even intelligently followed by the accused below. Cf. United States v Kelley, supra.

Turning to the rationale of my brothers, it is apparent that they, depending on three past decisions, invoke only the doctrine of waiver. Of those cases, however, only one is a special court-martial. The others, United States v May, 1 USCMA 174, 2 CMR 80, and United States v Smith, 8 USCMA 178, 23 CMR 402, were general courts-martial, in which the accused was represented by competent counsel. United States v Marcy, 1 USCMA 176, 2 CMR 82, alone involved a special court-martial, and it does not appear in the opinion whether the accused was represented by an attorney. If so, the difference between the requirement of an objection in that case and the myriad of later decisions to the contrary is self-explanatory. If not, then the opinion can only be explained by its promulgation during the early days of the Code, when the lack of qualified representation by nonlawyers had not become plainly apparent. However, such has since been clearly demonstrated by our continuing refusal to charge waiver against an accused so represented. I suggest that, in light of these cases, its invocation here is a slender basis for excusing the substantial departure on this record from the mandate of Congress. I, for one, prefer to follow our solidly established precedents to the contrary, and, in light of the fact that accused was not defended by an attorney, notice the plain error involved. Accordingly, I dissent.

I would reverse the decision of the board of review and remand the case for reassessment of sentence on the basis of the only signed and sworn charge preferred against this accused.