**UNITED STATES, Appellee**

v.

**David A. JOHNSTON, Master Sergeant U.S. Air Force, Appellant.**

No. 93–0210.
CMR No. 29070.

U.S. Court of Military Appeals.

Argued Jan. 5, 1994.

Decided May 31, 1994.

Appellant: *Captain Richard D. Desmond* (argued); *Colonel Terry J. Woodhouse* and *Captain Ursula P. Moul* (on brief); *Colonel Jay L. Cohen* and *Lieutenant Colonel Frank J. Spinner.*

Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Captain Carlos L. McDade* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial convicted appellant, in accordance with his pleas, of committing indecent acts upon a female under 16 years of age, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The approved sentence provides for a bad-conduct discharge and reduction to staff sergeant. The Court of Military Review affirmed the findings and sentence in an unpublished opinion. We granted review of the following issue:

WHETHER THE PREFERRAL OF CHARGES AGAINST APPELLANT BY A MEMBER OF THE BASE STAFF JUDGE ADVOCATE'S OFFICE WAS THE RESULT OF COMMAND INFLUENCE AND/OR EFFECTIVELY TRANSFORMED THE CONVENING AUTHORITY INTO THE "NOMINAL ACCUSER," WHICH DEPRIVED THE COURT–MARTIAL WHICH TRIED APPELLANT OF JURISDICTION OR DISQUALIFIED THE CONVENING AUTHORITY FROM TAKING ACTION ON APPELLANT'S CASE.

Having not raised the issue at his court-martial, appellant relies on evidence adduced at the investigation under Article 32, UCMJ, 10 USC § 832, to support his allegations of unlawful command influence and disqualification of the convening authority. We have examined the report of the Article 32 investigating officer for the limited purpose of determining if further inquiry is warranted pursuant to *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967). *See United States v. McCarthy*, 2 MJ 26, 28 n. 2 (CMA 1976).

At the Article 32 Investigation, appellant's detachment commander, Captain Schneider, testified that he intended to dispose of the allegations against appellant by nonjudicial punishment (Art. 15, UCMJ, 10 USC § 815), but when he asked for "advice" from the base staff judge advocate's office, he was told that "cases like this would normally go to a general court-martial." He testified that he was advised by a member of that office (who was not identified in his testimony) that if he did not prefer charges, "someone else would." Captain Schneider preferred charges notwithstanding some misgivings, but those charges were ordered withdrawn by the wing commander.

Major O'Reilly, the base staff judge advocate, then asked Captain Meador, a member of her staff, if he "would be comfortable preferring the same charges." Captain Meador assured Major O'Reilly that he was, having previously reviewed videotapes of the interrogation of the alleged victim and appel-

lant as well as the report of investigation prepared by the Office of Special Investigations. Captain Meador testified at the Article 32 Investigation that Major O'Reilly "had no influence over [his] decision to prefer Charges in this case."

The charges preferred by Captain Meador, and later an Additional Charge preferred by appellant's new detachment commander, were separately forwarded to the wing commander, with recommendations for disposition under Article 15 and by general court-martial, respectively. The wing commander, a special court-martial convening authority, ordered a separate Article 32 Investigation as to each set of charges. The same investigating officer separately recommended that all of the first set of charges be referred to a general court-martial and that one specification of the Additional Charge be dismissed but that the remaining specification be referred to the same general court-martial. The wing commander then forwarded each set of charges to the general court-martial convening authority with a recommendation for general court-martial in accordance with the Investigating Officer's views. Following the recommendations of his own staff judge advocate as to each set of charges, the general court-martial convening authority directed trial by general court-martial of all Charges and specifications.

Based on the foregoing facts, counsel for appellant now contend that Major O'Reilly improperly ordered Captain Meador to prefer charges, making her the actual accuser. Counsel argue further that Major O'Reilly's status as accuser disqualified the convening authority from referring the case to trial and from taking post-trial action on the case. Appellant asks that this Court either dismiss the charges outright, order a limited hearing to further inquire into his allegations of unlawful command influence, or order a new convening authority's action.

■ Appellate government counsel argue that the command-influence issue was waived by appellant's failure to raise it at his court-

martial, citing *United States v. Jeter*, 35 MJ 442 (CMA 1992). We hold that the issue was not waived.

In *United States v. Blaylock*, 15 MJ 190, 193 (CMA 1983), we stated:

> In view of the policy clearly stated in Article 37[ (a), UCMJ, 10 U.S.C. § 837(a),] we have never allowed doctrines of waiver to prevent our considering claims of improper command control. Indeed, to invoke waiver would be especially dangerous, since a commander willing to violate statutory prohibitions against command influence might not hesitate to use his powers to dissuade trial defense counsel from even raising the issue.

(Citations omitted.)

In *United States v. Jeter, supra,* relied on by the Government to support its waiver argument, we considered a claim that the convening authority had become an accuser and was thereby disqualified from referring the case to trial. *See* Art. 22(b), UCMJ, 10 USC § 822(b) ("If any such commanding officer is an accuser, the court shall be convened by superior competent authority. . . ."). *Jeter* did not involve unlawful command influence, but rather dealt with an allegation that the convening authority had become an accuser because of his personal interest in the outcome of the case based on evidence that he was acting to protect his son who was involved in misconduct. *See* Art. 1(9), UCMJ, 10 USC § 801(9) (An " 'accuser' " is "a person who signs and swears to charges . . . and any other person who has an interest other than an official interest in the prosecution of the accused."). In *Jeter* we said, "We are inclined to believe that generally a violation of Article 22(b) is waived if an accused and his counsel are well aware thereof and make no objection or protest at trial." 35 MJ at 447.

*Jeter* did not overrule *Blaylock*, for the simple reason that *Jeter* was not a command-influence case. We adhere to the *Blaylock* rule: unlawful command influence is not waived by failure to raise it at trial.

■ We turn next to appellant's argument that his court-martial "lacked jurisdiction" because the convening authority was disqualified by the base staff judge advocate's exercise of unlawful command influence. Appellant's jurisdictional argument is without merit. *See United States v. Blaylock*, 15 MJ at 193 ("[E]ven in egregious case of command influence, our Court has refused to hold that the error was 'jurisdictional.' "); *accord* 35 MJ at 446.

■ Finally, we must determine whether we should order further inquiry into appellant's claims of unlawful command influence. A *DuBay* hearing is appropriate to determine the facts once command influence is "raised." *See United States v. DuBay*, 17 USCMA at 149, 37 CMR at 413 (parties agreed that issue of command influence was raised). We believe that the threshold triggering further inquiry should be low, but it must be more than a bare allegation or mere speculation. *See Green v. Widdecke*, 19 USCMA 576, 579, 42 CMR 178, 181 (1970) ("[G]eneralized, unsupported claims of 'command control' will not suffice to create a justifiable issue.").

■ As we noted in *United States v. Allen*, 33 MJ 209, 212 (CMA 1991), there must be more than "[command influence] in the air" to justify action by an appellate court. Appellant's allegations in this case, even if true, do not even rise to the level "of [command influence] in the air." *See United States v. Levite*, 25 MJ 334, 341 (CMA 1987) (Cox, J., concurring) ("[A]n appellant's unsubstantiated assertion that unlawful command influence exists is not going anywhere. . . ."). We hold that further inquiry is not warranted in this case.

In the first place, there is not a scintilla of evidence that Captain Meador was coerced into preferring charges. The issue was squarely raised at the Article 32 investigation and all evidence on this point negates unlawful command influence.

Secondly, even if we assume *arguendo* that Major O'Reilly became an accuser by coerc-

ing Captain Meador into preferring charges, her actions would, at most, only be imputed to the special court-martial convening authority whom she advised. This case was convened by the next superior level of command above Major O'Reilly and that special court-martial convening authority. The general court-martial convening authority acted independently with the advice of his own staff judge advocate. Thus, even if we further assume *arguendo* that the special court-martial convening authority was an "accuser" because of Major O'Reilly's actions, the action taken in this case is exactly what Article 22(b) contemplates, *i.e.*, transmittal to the next higher level of command. In short, even if we accept appellant's bare assertions as true, he is not entitled to relief.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and WISS concur.

CRAWFORD, Judge (concurring in the result):

I agree with the majority (39 MJ at 244) that we will not apply waiver where there has been some evidence that the command influence was "to dissuade trial defense counsel from even raising the issue." *United States v. Blaylock,* 15 MJ 190, 193 (CMA 1983). *See also Solorio v. United States,* 483 U.S. 435, 451 n. 18, 107 S.Ct. 2924 n. 18, 97 L.Ed.2d 364 (1987) (applied waiver to the defendant's due process claims since they had not been raised earlier). But as the majority indicates in this case, "[T]here is not a scintilla of evidence that Captain Meador was coerced into preferring charges." 39 MJ at 244. Thus, after considering the matters advanced at oral argument, the final briefs, and the record of trial, I have concluded that the real issue here is not whether there was unlawful command influence, but rather, whether there was an improper preferral of charges. This Court has applied waiver where there has been an allegation of an improper preferral of charges that was not raised at trial. *United States v. Taylor,* 15 USCMA 565, 36 CMR 63 (1965); *United States v. May,* 1 USCMA 174, 2 CMR 80 (1952). The courts have indicated that where the commander is coerced into preferring charges, it is the same as if they were unsigned and unsworn. *United States v. Bolton,* 3 CMR 374 (ABR 1951), *pet. denied,* 1 USCMA 711, 3 CMR 150 (1952).

For the reasons stated above, I would invoke waiver.