**UNITED STATES**

v.

**John L. WRIGHT, Jr., 462–53–7327 Builder Third Class (E–4), U.S. Navy.**

**NMCM 96 00977.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 22 June 1995.

Decided 8 Aug. 1997.

556

LT C.J. McEntee, JAGC, USNR, Appellate Defense Counsel.

Maj Stephen Finn, USMC, Appellate Government Counsel.

LtCol Frank F. Krider, USMCR, Appellate Government Counsel.

Before DOMBROSKI, SEFTON and OLIVER, Appellate Military Judges.

OLIVER, Judge:

A special court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of an assault with a means likely to produce grievous bodily harm and an assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1994) [hereinafter UCMJ]. Because both of these assault specifications arose out of the same altercation, just prior to beginning the sentencing proceedings the military judge merged them into one specification of aggravated assault consummated by a battery, and so advised the members. The court-martial sentenced the appellant to confinement for 6 months, reduction to the lowest enlisted pay grade, and a bad-conduct discharge. The convening authority approved the sentence and, except for the bad-conduct discharge, ordered it executed.

We have examined the record of trial, the six assignments of error,[1] and the Government's response thereto. After careful consideration, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Only the first three assignments of error warrant any extensive discussion. First, however, we will review the relevant facts.

**Factual Summary**

The offense of which the appellant stands convicted stemmed from an altercation he had with another petty officer at the Seabee base in Rota, Spain. After an evening of drinking at "The Pit" and acting obnoxious, BU3 White got into an argument with the appellant outside the enlisted barracks. The evidence established that the appellant drew a knife and cut the back of White's head, a wound requiring several stitches and staples to close.

The defense theory of the case was that White was the aggressor and that the appellant never used a knife during the fight. He

---

1. I. THE GOVERNMENT COMMITTED REVERSIBLE ERROR WHEN IT ELICITED TESTIMONY TO THE EFFECT THAT APPELLANT DID NOT ACT SURPRISED WHEN A SENIOR CHIEF PETTY OFFICER APPREHENDED HIM AFTER AN ALLEGED AGGRAVATED ASSAULT.

II. UNLAWFUL COMMAND INFLUENCE DEPRIVED APPELLANT OF A FAIR TRIAL.

III. THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS THAT APPELLANT WAS PRESUMED INNOCENT "UNTIL" PROVEN GUILTY INSTEAD OF PRESUMED INNOCENT "UNLESS" PROVEN GUILTY.

IV. THE MILITARY JUDGE COMMITTED REVERSIBLE ERROR WHEN HE INSTRUCTED THE MEMBERS THAT "EACH FACT" IN THE GOVERNMENT'S CASE "NEED NOT BE ESTABLISHED BEYOND A REASONABLE DOUBT." (Reference and citation omitted.)

V. THE COURT-MARTIAL PROMULGATING ORDER ERRONEOUSLY NOTES TWO CHARGES THAT WERE WITHDRAWN PRIOR TO ARRAIGNMENT. (Reference omitted.)

VI. THE COURT-MARTIAL PROMULGATING ORDER FAILS TO REFLECT THE MILITARY JUDGE'S MERGER OF THE TWO SPECIFICATIONS UNDER CHARGE III. (Reference omitted.)

asserted that White's injury could have been caused by hitting his head against any of a number of sharp objects, such as the corner of the building or an object on the ground, during the several falls he took during the fight. However, the testimony of White to the effect that the appellant had cut his head with a knife was corroborated by his excited utterances as to the cause of his injury and the eye-witness testimony of other witnesses. Perhaps most compelling was the testimony of the medical doctor who treated the appellant that the lack of any bruising or contamination in and around the wound indicated that a cutting instrument probably had been used.[2]

While no knife was introduced at trial, several witnesses, including White, testified that they had seen the appellant carrying or brandishing one. One eyewitness testified that he had picked up a knife from the area of the fight and, upon learning that the appellant was the owner, returned it to him. When White went to the command's quarterdeck area to report his injury, he stated that the appellant was the perpetrator. Senior Chief Becker testified that after White had told him the appellant had cut him, he went to the appellant's room to apprehend him. Once Senior Chief Becker accompanied the appellant back to the quarterdeck area, the legal officer advised the appellant of his Article 31, UCMJ, 10 U.S.C. § 831, rights. The appellant waived those rights and then denied both having been involved in an altercation and having been in possession of a knife that evening. Determining that the truth was otherwise, the command placed the appellant in pretrial confinement, where he remained until the trial.

### Testimony Concerning the Appellant's Lack of Surprise

The appellant contends that the Government committed reversible error when it elicited testimony from Senior Chief Becker that the appellant did not seem at all surprised when he showed up at his barrack's room, after midnight, in the company of the officer

of the deck, and directed him to follow them to the quarterdeck. When asked for further explanation, Senior Chief Becker testified that the appellant acted almost as if he had been expecting him. The evidentiary relevance of the testimony, which the trial counsel noted in both his opening statement and closing argument, was that the appellant's lack of surprise indicated a guilty state-of-mind.

■ We first note that the appellant never objected to either the introduction of the evidence or the trial counsel's argument at the time of trial. Therefore, to prevail on appeal, any error must have been obvious under the analysis in *United States v. Olano*, 507 U.S. 725, 733–34, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). Moreover, to prevail on appeal under the *Olano* "plain error" standard, the appellant "bears the burden of persuasion ... [to show] that the error was prejudicial." *Id.* at 734, 113 S.Ct. at 1778. *See United States v. Pollard*, 38 M.J. 41, 51 (C.M.A.1993).

The appellant cites *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), to support his argument that the admission of this testimony was error. These cases stand for the proposition that the prosecution may not comment on an accused's post-arrest, post-*Miranda*-warning silence. The Supreme Court "held that the *Miranda* warnings contain an implied promise, rooted in the Constitution, that 'silence will carry no penalty.'" *Wainwright*, 474 U.S. at 295, 106 S.Ct. at 640 (quoting *Doyle*, 426 U.S. at 618, 96 S.Ct. at 2245).

■ The military has long followed a similar rule stemming from the provisions of Article 31, UCMJ, 10 U.S.C. § 831. *See* MIL. R. EVID. 301(f)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)("The fact that the accused during official questioning ... remained silent ... is inadmissible against

---

2. The witness who recovered the knife testified that he was fairly certain, after examining it with some care, that there was no blood on the blade. The medical doctor, in response to an insightful question from a member, testified that in her

experience during surgical operations, the scalpel is almost always free of blood, since there is always a delay in the flow of blood into the incision, by which time the scalpel blade has moved on or been removed entirely.

the accused."); *United States v. Noel*, 3 M.J. 328, 330 (C.M.A.1977)(2–1 majority) (holding that the accused's silence when the authorities discovered marijuana in a wooden elephant he was carrying, prior to Art. 31, UCMJ, 10 U.S.C. § 831, warnings, and the onset of official questioning, was inadmissible at court-martial). However, these protections do not extend to nontestimonial evidence. *Pennsylvania v. Muniz*, 496 U.S. 582, 590–92, 110 S.Ct. 2638, 2644–45, 110 L.Ed.2d 528 (1990); *see United States v. Oxfort*, 44 M.J. 337, 339–40, *cert. denied*, —— U.S. ——, 117 S.Ct. 692, 136 L.Ed.2d 615 (1997).

■ In *United States v. Elkins*, 774 F.2d 530, 538 (1st Cir.1985), upon which the appellant relies, the First Circuit Court of Appeals took this principle that the Government could not comment on the accused's silence further, concluding that it was plain error where the Government witness testified as to the defendant's lack of surprise at the time of his arrest. In *Elkins*, the court interpreted the testimony and the prosecutor's subsequent use of the evidence as an impermissible comment on the defendant's constitutional right to remain silent, and not as permissible "descriptive demeanor evidence." *Elkins*, 774 F.2d at 538–39.

As Justice Holmes noted 87 years ago in *Holt v. United States*, 218 U.S. 245, 252–53, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910), the Fifth Amendment provides a citizen protection from "the use of physical or moral compulsion to extort communication from him, not an exclusion of his body as evidence when it may be material." Had Senior Chief Becker noticed bruises on the appellant's face, observed blood on his clothes, or seen him in the process of throwing a knife into the Atlantic, this evidence would certainly have been admissible against him. His description of the appellant's demeanor was equally admissible. The trial counsel was likewise entitled to comment on this testimony as to the appellant's demeanor. Moreover, the defendants in *Elkins* had specifically invoked their constitutional rights to remain silent. In the instant case, the appellant waived his Article 31, UCMJ, 10 U.S.C. § 831, rights shortly after he was apprehended. There-

fore, the trial counsel was entitled to argue that the appellant lied in his initial statements to the authorities that he had not been involved in a fight and had not possessed a knife.

■ Finally, the evidence against the appellant was overwhelming. While BU3 White was hardly the most sympathetic of victims, the appellant's theory of the case was overwhelmed by the number of witnesses and the physical evidence to which the completely credible investigator and doctor testified. As a result, the additional inculpatory impact of the Senior Chief's observations as to the appellant's demeanor at the time of the arrest was only marginal. We conclude that there was no error. Even if there had been error, the appellant forfeited his right to prevail on appeal, and even if the error was plain, he has established no prejudice. *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993). Therefore, this assignment of error is without merit.

### Unlawful Command Influence

In his second assignment of error, the appellant contends that Lieutenant Commander Jackson, the command's executive officer, was so involved in the proceedings culminating in his court-martial that his participation rose to the level of unlawful command influence. We disagree.

■ Unlawful command influence is the "mortal enemy of military justice" and may tend "to deprive servicemembers of their constitutional rights." *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A.1986). *See United States v. Rosser*, 6 M.J. 267, 273 n. 19 (C.M.A.1979). An accuser is disqualified from convening a court-martial for the trial of the person accused. RULE FOR COURTS-MARTIAL 504(C)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. Someone who has a personal interest in seeing a prosecution proceed, such as the victim of an assault, must disqualify himself or herself from any official role in the decision to charge, convene, prefer, or refer a case to court-martial. However, normal involvement of a command's senior leadership

in the decisions and processes attending the courts-martial of personnel attached to their command does not, without more, raise the specter of unlawful command influence.

■ Although the appellant now argues that "obviously" Lieutenant Commander Jackson "had more than an official interest in [his] prosecution," it was not so clear at the time of the court-martial that he even raised an objection to the alleged error in the accusatorial process. Appellant's Brief and Assignments of Error at 7. Any such error is not jurisdictional, *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A.1994), and any such failure to object constitutes waiver. *United States v. Weasler*, 43 M.J. 15, 19 (1995); *United States v. Hamilton*, 41 M.J. 32, 36 (C.M.A.1994).

■ We also do not see how Lieutenant Commander Jackson's role was "obviously" personal. Although the executive officer, who also served on occasion as acting commanding officer, played various roles in this court-martial, the appellant has failed to demonstrate that he had anything but "an official interest" in the proceedings. Art. 1(9), UCMJ, 10 U.S.C. § 801(9)(definition of an "accuser"). Therefore, he was only a nominal accuser and not disqualified from swearing to the charges and, as acting commanding officer, taking other official action in the case. *See Thomas*, 22 M.J. at 394. We also note that it was Captain Fowler, the commanding officer, who actually convened the court-martial and referred the charges to trial.

The appellant has failed to meet his burden of raising the issue of command influence. *United States v. Ayala*, 43 M.J. 296, 299 (1995). We certainly do not believe that the involvement of Lieutenant Commander Jackson in this case resulted in a miscarriage of justice or seriously undermined the fairness, integrity, or public reputation of this judicial proceeding. *Cf. United States v. Jones*, 37 M.J. 321, 323–24 (C.M.A.1993).

Therefore, this assignment of error is without merit.

## Defective Instruction on the Presumption of Innocence

■ The appellant next contends that the military judge committed prejudicial error when he advised the members that "the accused is presumed to be innocent *until* his guilt is established beyond a reasonable doubt." He argues that the appropriate term should have been "unless." Brief and Assignment of Errors at 2. The military judge gave the instructions concerning reasonable doubt substantially as they appear in the January 1996 edition of the Trial Guide which the U.S. Navy–Marine Corps Trial Judiciary edits and promulgates. U.S. NAVY-MARINE CORPS TRIAL JUDICIARY, TRIAL GUIDE 76 (Jan.1996). As the appellant recognizes, Congress used the word "until" in the relevant statute: "Before a vote is taken on the findings, the military judge ... shall ... instruct the members of the court as to the elements of the offense and charge them ... that the accused must be presumed to be innocent *until* his guilt is established by legal and competent evidence beyond a reasonable doubt." Art. 51(c)(1), UCMJ, 10 U.S.C. § 851(c)(1) (emphasis added).

Although we have reviewed the various Supreme Court cases which the appellant cited, we do not read them as supporting his emphasis on the importance of the word "unless" in a reasonable doubt instruction. Indeed, in *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895), immediately after using the phrase *"unless* he is proven guilty," the court observed that the "presumption [of innocence] is an instrument of proof created by the law in favor of one accused, whereby his innocence is established *until* sufficient evidence is introduced" to overcome it. *Id.* at 459, 15 S.Ct. at 405 (emphasis added).

The appellant also quoted dictionary definitions to argue that the two words have decidedly different connotations. We recognize that different words can convey different meanings. But we believe the members perceived little, if any, difference within the context of all the instructions the military judge recited to them. Moreover, the appellant cites no authority for setting aside the findings of guilty based on this instruction.

Nor are we inclined to do so. As the Supreme Court recently observed, "so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, ... the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (citations omitted).

We also note that the appellant did not object to this instruction at the time of trial. Absent plain error, therefore, the appellant waived the issue. *United States v. Czekala,* 42 M.J. 168, 171 (1995); *United States v. Steinruck,* 11 M.J. 322, 323 (C.M.A.1981); R.C.M. 920(f). After a review of the entire record, we have no difficulty concluding that the members were properly advised as to the burden on the Government to convince them of appellant's guilt of the charged offense beyond a reasonable doubt.

Therefore, we hold that this assignment of error is without merit.

### Summary Assignments of Error

We have carefully considered the appellant's summary assignments of error. We will discuss each very briefly:

■ The military judge instructed the members that they may find the appellant guilty only if they were convinced that the Government had proved every element of the offenses alleged beyond a reasonable doubt. This was proper. There is no additional requirement that the Government must prove every fact in the Government's case beyond a reasonable doubt. *See Victor v. Nebraska,* 511 U.S. at 10, 114 S.Ct. at 1245. Moreover, the appellant did not object to this instruction at the time it was given, waiving any objection. *Czekala,* 42 M.J. at 170. This assignment of error is without merit.

In his final two assignments of error, the appellant correctly contends that the promulgating order is incorrect in two particulars: (1) it erroneously notes two charges that the Government withdrew prior to arraignment; and (2) it fails to reflect that after findings the military judge merged the two specifications of which the appellant had been found guilty into one specification of aggravated assault consummated by a battery. These two assignments of error have merit and we will provide appropriate relief in our decretal paragraph.

### Conclusion

Accordingly, we affirm the findings and sentence, as approved on review below. The appropriate authority shall issue a corrected promulgating order.

Chief Judge DOMBROSKI and Judge SEFTON concur.